453 S.E.2d 350

**Mabel BASS, Plaintiff Below,**

v.

**Laura COLTELLI and Douglas Bass, Defendants Below.**

No. 22304.

Supreme Court of Appeals of West Virginia.

Submitted Oct. 4, 1994.

Decided Dec. 12, 1994.

Lawrence M. Schultz, D. Michael Burke, Askin, Burke & Schultz, Martinsburg, and Daniel R. James, Barr & James, Keyser, for plaintiff.

Richard L. Douglas, Kenneth E. Webb, Jr., Bowles, Rice, McDavid, Graff & Love, Charleston, and Cynthia S. Gustke, Busch & Talbott, L.C., Elkins, for defendants.

MILLER, Justice:[1]

In this certified case from the Circuit Court of Berkeley County, West Virginia, we are asked to address several questions which relate to a mother's right to sue her son's attorney. The certified questions, and the trial court's answers to them, are as follows:

I. Does the mother of an adult son have standing to sue her son's attorney for charging a contingent fee on medical payments for injuries incurred when the son was a minor, when the mother has received full payment for the medical ex-

---

1. Pursuant to an Administrative Order entered by this Court on September 13, 1994, retired Justice Thomas B. Miller was recalled for the September 1994 term because of the physical incapacity of Chief Justice W.T. Brotherton, Jr.

penses she incurred and the son has no complaint with his attorney?

Answer of the Court: Not if the son is no longer a minor at the time the mother would sue, and the son has an independent contractual relationship with the attorney.

II. Does the mother and next friend of a minor child injured in an auto accident have:

a) the right to obtain and personally keep medical payments coverage for the medical expenses she incurred for the treatment of her son's injury when such expenses were paid by a collateral source?

Answer of the Court: Only if that collateral source had asserted subrogation rights against the mother for that payment during the son's minority.

b) an individual claim to that portion of the liability and underinsured motorist settlement proceeds applicable to the medical expenses?

Answer of the Court: No, even if she had uncompensated out of pocket expenses not paid by a collateral source, unless the mother had asserted a right of subrogation.

III. Is it "unconscionable" for an attorney to charge a contingent fee for obtaining medical payment benefits, under the circumstances in this case?

Answer of the Court: No.

IV. Where an attorney collects first-party, no fault medical payments funds for an injured client, is she entitled to a contingent fee where:

a) The insurance company pays promptly and without contesting coverage?

Answer of the Court: Yes, if within the scope of her contract of employment.

b) The insurance company contests coverage then later, without suit being filed, concedes coverage and pays in full?

Answer of the Court: Yes, if within the scope of her contract of employment.

V. Does the plaintiff, Defendant Bass' mother, have any legal right to hold funds which she obtained as next friend on behalf of her son in settlement for his injuries prior to his eighteenth birthday as a set-off for claims she has asserted in this litigation?

Answer of the Court: Only to the extent that those funds would be needed to pay subrogation claims asserted against her as legal representation/next friend during the minority of her son, or to the extent those funds would satisfy validly asserted subrogation rights of the mother.

## I.

On September 30, 1990, Douglas Bass was a guest passenger in a car driven by Darren Weakley, when that car was struck by a vehicle negligently driven by Cary Dunham. Shortly thereafter, on October 16, 1990, Mrs. Mabel Bass hired an attorney, Ms. Laura Coltelli, to represent both her and her son, who was a minor when he was injured in the accident. Mrs. Bass signed an "Authority to Represent" form which indicated that she was retaining Ms. Coltelli as counsel to represent her in her claim against Cary Dunham, the driver at fault in the accident, "or whoever is liable for my son, Douglas Bass' injuries or damages...." The agreement specified that Mrs. Bass would pay Ms. Coltelli one-third of the proceeds of any recovery Ms. Coltelli obtained as compensation for her services.

Several sources of insurance coverage were involved in this case. The Weakley vehicle was insured by State Farm Insurance Company. This policy provided medical payment benefits limited to $25,000.00. State Farm acknowledged its liability under this policy, and, as medical bills were sent by Ms. Coltelli, State Farm made payments until the $25,000.00 limit was reached. Ms. Coltelli deducted her one-third contingent fee from each check and remitted the net amount to Mrs. Bass. Mrs. Bass was aware of this procedure, and initially she made no complaint. However, the one-third fee that Ms. Coltelli charged upon receipt of this medical payment coverage is at the center of the controversy in this case.

The parties agree that many of Douglas Bass' medical bills were paid by medical insurance provided by Mrs. Bass' employer. The exact amount of the payments provided under this coverage is not contained in the

record. The parties acknowledge that there may be an inchoate right of subrogation arising from the payments made by the medical insurance carrier, but this matter is also not developed factually.

Another source for reimbursement of medical expenses was a medical payment provision in Mrs. Bass' automobile insurance policy with State Farm. Although State Farm initially declined to stack medical payment coverages, Ms. Coltelli eventually negotiated the payment of over $21,000.00. Because of the delay in obtaining these funds, they were paid directly to Douglas Bass in August, 1992, after he reached the age of majority.

In August, 1991, the liability portion of Douglas Bass' claim was settled without the necessity of filing suit, when Mr. Dunham's liability carrier agreed to a $200,000.00 settlement negotiated by Ms. Coltelli. Mrs. Bass also had underinsured motorist coverage with State Farm, which provided her son with a $60,000.00 settlement. Douglas Bass turned eighteen years old on June 18, 1991, so a summary proceeding was unnecessary.

At some point after the $200,000.00 liability settlement in August, 1991, the relationship between Mrs. Bass and her son became strained. Because she perceived that it would be a conflict of interest to represent both of them, Ms. Coltelli ceased representing Mrs. Bass, who was subsequently left out of a new contingent fee agreement that was drafted between Douglas Bass and Ms. Coltelli.

In April, 1992, Mrs. Bass sought new counsel of her own. This attorney demanded that Ms. Coltelli refund the one-third contingent fee she took from the $25,000.00 medical payment benefit on the Weakley vehicle. At the suggestion of ethics counsel for the West Virginia State Bar, Ms. Coltelli reduced her fee from one-third to one-fourth of the first $25,000.00 medical payment benefit. She

paid this refund directly to Douglas Bass. However, the matter was not resolved, and on January 15, 1993, Mrs. Bass filed this suit against Ms. Coltelli and Douglas Bass. An amended complaint was filed on April 15, 1993. On November 9, 1993, the circuit court granted the defendants' motion for summary judgment. However, the court later rescinded its order and certified the foregoing questions to this Court.

## II.

■ Neither party questions whether the issues raised are subject to certification under our certified question statute, W.Va. Code, 58–5–2 (1967).[2] This certification is not unlike the certified question in *State v. Lewis,* 188 W.Va. 85, 422 S.E.2d 807 (1992), where we said, in syllabus points 1 and 2:

> 1. This Court will make an independent determination of whether the matters brought before it lie within its jurisdiction.
>
> 2. "The question of certifiability of decisions of a lower court to this Court is one which goes to the jurisdiction of this Court." Syllabus Point 2, *State v. Brown,* 159 W.Va. 438, 223 S.E.2d 193 (1976).

In *Lewis,* both parties had joined in the certification. The certification was made in a criminal case, and we held that W.Va.Code, 58–5–2, was confined to civil cases.

The 1967 revision to W.Va.Code, 58–5–2, broadened the statutory grounds for certifying questions to this Court. Prior to 1967, W.Va.Code, 58–5–2, permitted certification only for questions related to the sufficiency of a summons or return of service, or challenge to the sufficiency of a pleading. The 1967 revision expanded the questions subject to certification to include sufficiency of a motion for summary judgment where it has been denied, a motion for judgment on the pleadings, jurisdiction of the circuit court of

---

**2.** The relevant text of W.Va.Code, 58–5–2 (1967), is:

"Any question arising upon the sufficiency of a summons or return of service, upon a challenge of the sufficiency of a pleading or the venue of the circuit court, upon the sufficiency of a motion for summary judgment where such motion is denied, or a motion for judgment on the pleadings, upon the jurisdiction of the cir-

cuit court of a person or subject matter, or upon failure to join an indispensable party, in any case within the appellate jurisdiction of the supreme court of appeals, may, in the discretion of the circuit court in which it arises, and shall, on the joint application of the parties to the suit, in beneficial interest, be certified by it to the supreme court of appeals for its decision...."

the person or subject matter, or failure to join an indispensable party. Therefore, questions subject to certification pursuant to W.Va.Code, 58–5–2, are limited to any question arising upon the sufficiency of a summons or return of service, upon a challenge of the sufficiency of a pleading or the venue of the circuit court, upon the sufficiency of a motion for summary judgment where such motion is denied, or a motion for judgment on the pleadings, upon the jurisdiction of the circuit court of a person or subject matter, or upon failure to join an indispensable party.[3]

Both before and after the 1967 amendment to W.Va.Code, 58–5–2, this Court held that an issue is not certifiable if it rests on facts which must be proved. Prior to the 1967 amendment, in syllabus point 3 of *Sage v. Boyd*, 145 W.Va. 197, 113 S.E.2d 836 (1960), this Court stated as follows:

Under the provisions of Code, 58–5–2, this Court has no jurisdiction to review the sufficiency of a pleading on certification where the question raised must be disposed of by proof.

A similar rule was followed after the 1967 amendment, as explained in syllabus point 1 of *Nicholas v. Nicholas*, 152 W.Va. 424, 163 S.E.2d 880 (1968):

A ruling upon a motion to dismiss for lack of jurisdiction which presents a question that must be determined by proof is not certifiable to this Court under the provisions of Section 2, Article 5, Chapter 58, Code, 1931, as amended by Chapter 17, Acts of the Legislature, 1967, Regular Session.

There has been little elaboration as to the basis for this rule. However, it is obvious that if the legal issue which is the basis for the certified questions is dependent upon facts which are or may be disputed, this will affect the answer to the certified question. Moreover, where a certified question depends on facts that are not contained in the record, it is not possible for this Court to formulate an appropriate answer to the certified questions. In *Nicholas*, the disputed factual issue was whether the defendant had met the residency requirements for a divorce in another state in order to give its decree full faith and credit in this State.

■ This is not to say that where the facts are not disputed, certification will be improper if the statutory criteria are met. Obviously, where there is a motion to dismiss under Rule 12(b)(6) of the West Virginia Rules of Civil Procedure (W.Va.R.Civ.P.) for failure to state a claim upon which relief can be granted, the facts in the complaint are considered. This was set out in syllabus points 2 and 3 of *Toler v. Shelton*, 159 W.Va. 476, 223 S.E.2d 429 (1976):

2. Certification is a procedure which is available only to examine the facial sufficiency of a pleading and does not lie to test the sufficiency of a pleading when measured against underlying facts.

3. A motion under Rule 12(f) W.Va. R.C.P., goes solely to the sufficiency of defenses as they are presented in the pleadings and matters outside the pleadings, such as affidavits, may not be used or considered.

We have recognized that the purpose of the certified question statute is to determine the legal correctness of those issues enumerated in the statute. These are often critical questions that will determine the final outcome of a case. Consequently, a correct determination can avoid needless delay, serve judicial economy, and avoid the expense of a trial and subsequent appeal for the parties. See *Weatherford v. Arter*, 135 W.Va. 391, 63 S.E.2d 572 (1951).

Other jurisdictions have taken a restrictive approach to their review of certified questions. For example, in *ASL Associates v. Zoning Comm'n of the Town of Marlborough*, 18 Conn.App. 542, 546, 559 A.2d 236, 239 (1989), despite a broad certification provision that allowed it to accept any issue that

---

3. The relevant text of W.Va.Code, 58–5–2 (1931), is:

Any question arising upon the sufficiency of a summons or return of service, or challenge of the sufficiency of a pleading, in any case within the appellate jurisdiction of the supreme

court of appeals, may, in the discretion of the circuit court in which it arises, and shall, on the joint application of the parties to the suit, in beneficial interest, be certified by it to the supreme court of appeals for its decision....

was appealable, the court stated the following:

> In those instances in which the questions reserved cannot be answered because the facts that were the subject of the stipulation are inadequate to furnish a basis for the underlying cause of action, this court should refuse to answer them.

Another approach is found in *Gelinske v. Farmers Grain & Trading Co.*, 446 N.W.2d 261, 262 (N.D.1989), which involved a much broader certification statute than ours.[4] The North Dakota Supreme Court had imposed this restriction on certification:

> We have repeatedly said that a certified question will not be considered by this court unless the disposition of the case depends wholly or principally upon the construction of law determined by the answer, regardless of whether the answer is in the negative or affirmative.

(Citations omitted). The certified question in *Gelinske* involved whether consequential damages could be recovered in an action for conversion of property. However, there were no facts to demonstrate the consequential damages.

Finally, in *State, Agency of Transportation v. City of Winooski*, 147 Vt. 649, 650, 520 A.2d 998, 999 (1986), the court laid down this test for its acceptance of a certified question:

> Only those questions should be certified up before judgment which bring with them a framework sufficient to allow this Court to issue a decision which will be pertinent and inevitable in the disposition of the case below. (Citation omitted.)

■ In this case, we do not believe that the procedural requirements of our certification statute have been met. There has been no denial of the defendant's motion for summary judgment. Initially, the lower court granted the defendants' motion, but this or-

der was later rescinded and questions were certified to this Court. Even if we were to assume that the court denied the defendants' motion for summary judgment by rescinding its initial order in their favor, there are other problems.

First, we find the certified questions go beyond any issues raised in the pleadings. The amended complaint filed by Mabel Bass consisted of two counts. The first count claimed that Ms. Coltelli overcharged her by taking a one-third fee in obtaining funds from the $25,000.00 medical payment coverage in the State Farm policy covering the Weakley motor vehicle in which Douglas Bass was a passenger.

The second count of the amended complaint sought to recover $47,241.71 that Mrs. Bass incurred in medical, hospital, and related expenses resulting from the injuries to Douglas Bass. She claimed that she should be paid this amount from the settlement proceeds that were obtained from the tortfeasors' automobile liability insurance and Mrs. Bass' underinsured motorist coverage. These monies were obtained after Douglas Bass reached the age of eighteen and were paid to him after Ms. Coltelli deducted her contingent fee. Mrs. Bass asserted that she would have been able to recover this amount if the case had proceeded to trial. The tortfeasor would not be able to claim a set-off under the collateral source rule for the payments made by Mrs. Bass' medical insurance carrier.

The defendants' motion for summary judgment was extremely general, stating as follows:

> Defendants, Laura R. Coltelli and Douglas Bass, by counsel, move this Honorable Court to grant summary judgment in their favor, pursuant to Rule 56 of the West Virginia Rules of Civil Procedure, on the grounds that there are no issues of materi-

---

4. The court in *Gelinske, supra*, quoted this statute:

    Where any cause is at issue, civil or criminal, in any district court or county court in this state and the issue of the same will depend principally or wholly on the construction of the law applicable thereto, and such construction or interpretation is in doubt and vital, or of great moment in the cause, the judge of any

such court, on the application of the attorney for the plaintiff or defendant in a civil cause, and upon the application of the attorneys for the plaintiff and defendant in a criminal cause, may halt all proceedings until such question shall have been certified to the supreme court and by it determined.

446 N.W.2d at 262.

al fact and defendants assert that it was appropriate and reasonable for defendant Laura R. Coltelli to charge a contingent fee for handling a medical payment claim, where Ms. Coltelli, in addition to recovering on the medical payment claim, also obtained a recovery for her client under both liability and underinsured motorist coverage. Defendants further assert that the monies which Mabel Bass is holding, which rightfully belong to Douglas Bass, should be ordered returned to Douglas Bass immediately.

Nothing in the record provides any factual basis that would indicate whether Mrs. Bass faces subrogation claims as a result of the payments made by her own medical insurance, which covered her son during his minority. The insurance policy is not included in the record. There is no agreed statement of facts by the parties on which a motion for summary judgment could be determined. What we are given as a record are depositions .taken by the parties that have little relationship to the certified questions now before us.

■ The defendant's summary judgment motion is so general that it is impossible to determine the factual basis upon which the certified questions were formulated. To compound this problem, the plaintiffs do not address all of the certified questions. Finally, none of the certified questions address Count II of the plaintiff's amended complaint. Even though our certified question statute allows for certification of a question arising from a denial of a motion for summary judgment, such certification will not be accepted unless there is a sufficiently precise and undisputed factual record on which the legal issues can be determined. Moreover, such legal issues must substantially control the case. These circumstances do not exist in this case.

As a consequence, we decline to address the certified questions, and, therefore, we dismiss the certification.

Dismissed.

BROTHERTON, C.J., did not participate.

MILLER, Retired Justice, sitting by temporary assignment.