557 S.E.2d 773

STATE of West Virginia ex rel. WEST VIRGINIA DEPARTMENT OF HEALTH AND HUMAN RESOURCES, BUREAU FOR CHILD SUPPORT EN-FORCEMENT, Plaintiff Below, Appellant,

v.

Bill WERTMAN and April L. Dowler, in Their Capacity as Family Law Masters for the Twenty–Third Judicial Circuit, Defendants Below, Appellees.

No. 29687.

Supreme Court of Appeals of West Virginia.

Submitted Oct. 2, 2001.

Decided Dec. 7, 2001.

Janet L. Scalia, Department of Health & Human Resources, Bureau of Child Support Enforcement, Martinsburg, for the Appellant.

John M. Hedges, Teresa J. Lyons, Byrne & Hedges, Morgantown, for the Appellees.

ALBRIGHT, Justice:

In this case, the Circuit Court of Berkeley County has certified two questions to this Court. The certified questions and the circuit court's answers are as follows:

1. Does West Virginia Code § 51–2A–1 et seq. permit family law masters to enter enforceable orders imposing sanctions, including incarceration, for indirect civil contempt for failure to pay child support?

Answer of the circuit court: Yes.

2. If the Code does permit family law masters to enter enforceable orders imposing sanctions, including incarceration, are such provisions constitutional?

Answer of the circuit court: Yes.

■■■■ We initially must determine whether the matter before us is proper for certification because "[t]he question of certifiability of decisions of lower court to this Court is one which goes to the jurisdiction of this Court." Syl. Pt. 2, *State v. Brown*, 159 W.Va. 438, 223 S.E.2d 193 (1976). The questions herein presented arise from a motion for a judgment on the pleadings and order of certification filed in the circuit court by the West Virginia Department of Health and Human Resources, Bureau of Child Support Enforcement (hereinafter "BCSE"). Upon the agreement of the parties, the questions before us were certified to this Court by order entered January 4, 2001, pursuant to West Virginia § 58–5–2 (1998) (Supp. 2001), which reads in part, "[a]ny question of law, including ... questions arising upon ... a motion for judgment on the pleadings ... may, in the discretion of the circuit court in which it arises, be certified ... to the supreme court of appeals for its decision ...." [1] While West Virginia Code § 58–5–2

1. The complete text of West Virginia Code § 58–5–2 is as follows:

Any question of law, including, but not limited to, questions arising upon the sufficiency of

allows certification of a question from a motion for judgment on the pleadings, we have also established that "certification will not be accepted unless there is a sufficiently precise and undisputed factual record on which the legal issues can be determined. Moreover, such legal issues must substantially control the case." Syl. Pt. 5, in part, *Bass v. Coltelli*, 192 W.Va. 516, 453 S.E.2d 350 (1994). We find this to be true in the instant case. We also find that the questions as certified are overlapping and do not contain current statutory cites due to recent legislative amendments. Therefore, we invoke our authority to reformulate the questions as certified to read: [2]

Under the provisions of the West Virginia Constitution, are family law masters, serving through December 31, 2001, in the family court division of the circuit courts pursuant to the provisions of Chapter 51, Article 2A of the West Virginia Code, judicial officers, having the authority to enter enforceable orders imposing sanctions, including incarceration, for indirect civil contempt of a court order to pay child support?

## I. Factual and Procedural Background

Bonnie H. Kratovil and April L. Dowler both served as family law masters for the twenty-third judicial circuit,[3] which is comprised of three counties: Berkeley, Jefferson and Morgan. At the time the mandamus action was instituted below, the domestic relations hearings for Berkeley County were divided between the family law masters, while Family Law Master Dowler was solely responsible for the Morgan County hearings and Family Law Master Kratovil for those in Jefferson County.

On July 27, 2000, Family Law Master Kratovil issued an order in a Berkeley County case in which civil contempt enforcement was sought for failure to pay child support. In addition to canceling the civil contempt hearing in that case, the July 27, 2000, order served as a vehicle for Family Law Master Kratovil to announce that she would not set further hearings on petitions for civil contempt in any case until it was clarified by an appropriate judicial tribunal whether family law masters are judicial officers under the state constitution with the power to preside in contempt proceedings and to order the incarceration of a contemnor.

Thereafter, the family law masters in the twenty-third judicial circuit adopted the following practice with regard to petitions for indirect civil contempt based on the failure to pay child support. By order of the supervising circuit court judge in Jefferson County, Family Law Master Kratovil continued to conduct hearings and issue recommended orders to the circuit court for entry. However, she did not suggest incarceration as a sanction in any of the recommended orders. In Morgan County, Family Law Master Dowler canceled previously set civil contempt hearings and did not set any further contempt hearings. Neither family law master set any further civil contempt hearings in Berkeley

a summons or return of service, upon a challenge of the sufficiency of a pleading or the venue of the circuit court, upon the sufficiency of a motion for summary judgment where such motion is denied, or a motion for judgment on the pleadings, upon the jurisdiction of the circuit court of a person or subject matter, or upon failure to join an indispensable party, may, in the discretion of the circuit court in which it arises, be certified by it to the supreme court of appeals for its decision, and further proceedings in the case stayed until such question shall have been decided and the decision thereof certified back. The procedure for processing questions certified pursuant to this section shall be governed by rules of appellate procedure promulgated by the supreme court of appeals.

2. According to the provisions of the Uniform Certification of Questions of Law Act, West Virginia Code § 51–1A–4, "[t]he supreme court of appeals of West Virginia may reformulate a question certified to it." *See also* Syl. Pt. 3, *Kincaid v. Mangum*, 189 W.Va. 404, 432 S.E.2d 74 (1993) (the authority to reformulate certified questions derives from both the Uniform Certification of Questions of Law Act (W.Va.Code §§ 51–1A–1 to 13) and the statute defining the jurisdiction of the Supreme Court to entertain certified questions (W.Va.Code § 58–5–2)).

3. Bonnie H. Kratovil resigned as family law master and was replaced by William T. Wertman, Jr., on November 1, 2000. Mr. Wertman was substituted as a party in this action pursuant to Rule 25(d) of the West Virginia Rules of Civil Procedure.

County, and all previously scheduled hearings were canceled.

On August 17, 2001, the BCSE petitioned the Berkeley County Circuit Court for a writ of mandamus to compel the family law masters to conduct civil contempt proceedings for failure to pay court-ordered child support, to enter orders rather than recommend them to the circuit court for entry, and to impose incarceration in appropriate cases. The lower court entered an order granting the writ of mandamus on September 20, 2000, in which the lower court ruled that family law masters had a statutory duty pursuant to West Virginia Code §§ 51–2A–1 to – 12 to conduct contempt proceedings and to resolve petitions for contempt without the supervision of the circuit court. The September 20, 2000, order also directed the family law masters "to schedule and hear all cases of civil contempt and when such evidence supports [it,] the Family Law Masters shall impose incarceration upon their own orders as provided by statute." However, the September 2000 order did not address the question of whether a family law master was constitutionally authorized to conduct contempt proceedings, enter enforceable orders and impose incarceration as a sanction. The family law masters filed a motion for reconsideration and requested the circuit court to address whether the state constitution authorized family law masters to resolve contempt petitions without the oversight of the circuit court. At the motion hearing on November 6, 2000, the parties presented certified questions to the circuit court. On January 4, 2001, the lower court entered the order which certified the questions now before this Court.

## II. Standard of Review

■ In syllabus point one of *Gallapoo v. Wal–Mart Stores, Inc.*, 197 W.Va. 172, 475 S.E.2d 172 (1996), we stated: "The appellate standard of review of questions of law answered and certified by a circuit court is *de novo.*"

## III. Discussion

Prior to the ratification on November 7, 2000, of the Unified Family Court Amendment to the state constitution, Article VIII, Section 1 of the West Virginia Constitution provided the sole definition of the courts and judicial officers in the state:

The judicial power of the State shall be vested solely in a supreme court of appeals and in the circuit courts, and in such intermediate appellate courts and magistrate courts as shall be hereafter established by the legislature, and in the justices, judges and magistrates of such courts.

W.Va. Const. art. VIII, § 1.

The Unified Family Court Amendment to the state constitution added family courts to the judicial structure of the state by appending the following provision to Article VIII:

There is hereby created under the general supervisory control of the supreme court of appeals a unified family court system in the state of West Virginia to rule on family law and related matters. Family courts shall have original jurisdiction in the areas of family law and related matters as may hereafter be established by law. Family courts may also have such further jurisdiction as established by law.

Family court judges shall be elected by the voters for a term prescribed by law not to exceed eight years, unless sooner removed or retired as authorized in this article. Family court judges must be admitted to practice law in this state for at least five years prior to their election. Family court judges shall reside in the circuit for which he or she is a judge.

The necessary number of family court judges, the number of family court circuits and the arrangement of circuits shall be established by law. Staggered terms of office for family court judges may also be established by law.

The supreme court of appeals shall have general supervisory control over all family courts and may provide for the assignment of a family court judge to another court for temporary service. The provisions of section seven and eight of this article applicable to circuit judges shall also apply to family court judges.

W.Va. Const. art. 8, § 16.[4]

■ The family law masters argue, and we agree, that before the Unified Family Court Amendment was ratified, family law masters clearly were not judicial officers and the legislature could not grant them that status by statute. However, they further argue that subsequent to ratification of the amendment, family law masters were granted judicial officer status, and they may now, pursuant to statutory authority, conduct contempt hearings for which they may enter and enforce orders. It is on this point that we disagree.

We begin our discussion with a brief examination of the history and development of the family law master system in West Virginia. In 1986, the legislature passed Enrolled House Bill 2094, which established a family master system to address issues raised by federal child support requirements and to develop a more uniform manner by which the growing domestic relations caseload was managed throughout the state. 1986 W.Va. Acts Reg. Sess. c. 42. The constitutionality of this enactment was challenged in *Starcher v. Crabtree*, 176 W.Va. 707, 348 S.E.2d 293 (1986). At the time of the challenge, the judicial power of the state was vested in the Supreme Court, the circuit courts and the magistrate courts, with the officers named in the constitution to exercise judicial power therein being justices, judges and magistrates respectively. W.Va. Const. art. VIII, § 1. In *Starcher v. Crabtree*, this Court held the family law master system as set forth in Enrolled House Bill 2094 unconstitutional because it would have divested the circuit courts of jurisdiction of domestic relation cases. In reaching this conclusion, we noted that: "The [1974 Judicial Reorganization] amendment eliminated the legislature's power to change the jurisdiction of divorce cases and constitutionally placed divorce cases in the circuit court." *Id.* at 708, 348 S.E.2d at 294–95.

■ In response to the *Starcher v. Crabtree* decision, the legislature enacted Enrolled House Bill 210 during its 1986 Second Extraordinary Session. 1986 W.Va. Acts 2nd Ex. Sess. c. 2. This legislation included the expression of the legislature's intent to create a family law master system which would "fully protect the constitutional jurisdiction of the courts" while establishing a uniform and expedited process governing family law remedies "modeled upon traditional equity practice in this state which has utilized commissioners in chancery, masters, master's reports and recommended decisions, authoritative review by the circuit courts and other devices of an equitable nature." *Id.* at 1079. This express legislative intent is embodied in the specific provisions of the second 1986 enactment, which included the requirement that all decisions rendered by family law masters, with the exception of temporary support and custody orders, take the form of recommended orders to the circuit court, whose judges retained the power to enter orders imposing sanctions or granting or denying relief. *Id.* at 1074. In other words, it is clear that the legislature intended that family law masters assist the circuit courts in the disposition of domestic relations cases without supplanting the jurisdiction of the circuit court.

The function of family law masters with regard to contempt actions under the post-*Starcher v. Crabtree* enactment was to hear petitions for contempt unless a right to jury trial had not been waived,[5] with all decisions and orders regarding sanctions for contempt remaining the responsibility of the circuit court judge. The authority of family law masters to hold hearings on contempt actions was removed by the legislature in 1990. 1990 W.Va. Acts Reg. Sess. c. 40. It was not until 1999, when the legislature established a family court division within the circuit courts,[6] that the family law masters serving in the division were again authorized to hear certain contempt actions.[7] 1999 W.Va. Acts

---

4. This amendment was proposed by House Joint Resolution 30 during the 1999 Regular Session of the 74th Legislature, and later ratified by the electorate on November 7, 2000.

5. *Id.* at 1069.

6. W.Va.Code § 51–2A–1 (1999) (Repl. Vol. 2000).

7. West Virginia Code § 51–2A–10(a)(11) (1999)(Repl.Vol.2000), relating to matters family law masters may hear, states: "On and after the first day of October, one thousand nine hundred-

1st Ex. Sess., c. 10. In defining the functions of family law masters under the family court division structure, the 1999 Act continued to respect the constitutionally vested judicial power of the circuit judges by continuing to designate family law masters as commissioners of the circuit courts. This provision of the 1999 Act remains the currently operative law found in West Virginia Code § 51–2A–2 (1999) (Repl. Vol. 2000), which reads, in pertinent part:

> (d) The family law master, as a commissioner of the circuit court, has both administrative and judicial functions to perform, as described in subsections (e) and (f) of this section.
>
> . . . .
>
> (f) In exercising the judicial function of the family court, the family law master, free of direct oversight by a circuit judge, is responsible for the preparation or preliminary consideration of issues requiring judicial decision, subject only to subsequent review by a circuit judge . . . .

W.Va.Code § 51–2A–2 (2001) (Supp.2001).

██ As consistently recognized by the legislature in its enactments following the decision in *Starcher v. Crabtree*, family law masters are not constitutionally vested with judicial power. Consequently, family law masters may serve only as assistants to the circuit courts and the circuit judges in carrying out their functions as the sole repository of original jurisdiction over divorces and related domestic matters. With the limited exception of entering temporary orders of support and custody, all decisions of family law masters have taken the form of recommendations to the circuit court for final determination and entry of orders by a circuit court judge, in keeping with the recognized limitation of matters which a judge may delegate to a master or commissioner in equity. *Rosier v. McDaniel*, 126 W.Va. 434, 440, 28 S.E.2d 908, 912 (1944) ("It does not lie in the power of the judge of a court of equity . . . to delegate to a commissioner the primary duty of deciding, the fundamental issues in a cause."); *Currence v. Currence*, 123 W.Va. 599, 606–06, 18 S.E.2d 656, 660 (1941) ("The statute [authorizing the reference of a divorce suit to a commissioner in chancery] does not in any way attempt to authorize a court to refer a cause to a commissioner for the purpose of determining the main issues in the case."). Likewise, the powers of masters or commissioners in equity are limited in contempt actions, as aptly summarized in 17 Am.Jur.2d *Contempt* § 48 (1990): "Contempts . . . before masters . . . to whom judicial or quasi-judicial functions are delegated are cognizable and punishable by the court to which the persons were attached." (Footnotes omitted.) In other words, such agents of the court are not empowered to punish disobedience or contempt of court orders since that power resides solely within the authority of the court.

██ With the adoption of the Unified Family Court Amendment, the legislature received the authorization necessary to establish a system of family courts with officers vested with judicial power to entertain and resolve cases involving certain domestic relations matters. However, legislation which merely designates a family court division within the circuit court or refers to family law masters as family court judges does not establish the system of family courts and family court judges embraced by this amendment.[8] Accordingly, family law masters serving through December 31, 2001, have been and remain persons assigned to assist the circuit courts and circuit court judges in carrying out their judicial functions in the

---

ninety-nine, civil contempt and direct contempts: Provided, That criminal contempts must be heard by a circuit judge." This section of the Code was subsequently amended during the 2001 legislative session to read: "Civil contempt and direct contempts: Provided, That criminal contempts must be heard by a circuit judge." 2001 W.Va. Acts Reg. Sess. c. 91.

8. Enrolled House Bill 5007, enacted by the legislature during its 5th Extraordinary Session in 2001, gives effect to the purposes of the Unified Court Amendment. 2001 W.Va. Acts 5th Ex. Sess. c. 5. By its express terms, this legislation does not operate to change the status of the family law masters under the Judicial Reorganization Amendment to family court judges under the Family Court Amendment until January 1, 2002. Enr. H.B. 5007 at 106. Accordingly, the effect or operation of the provisions of Enrolled House Bill 5007 is not pertinent to our present discussion.

area of domestic relations matters. The hallmark of such assisting roles, be they termed masters, commissioners or referees, is that the persons assuming the roles have no judicial power to enter a final and binding order, such as an order of incarceration for indirect contempt.[9]

For the reasons stated herein, we answer the certified question, as reformulated, in the negative.

Certified question answered.

9. We take notice of the provisions of West Virginia Code § 49–5A–1, *et seq.* (Repl. Vol. 2001), permitting juvenile referees to order juveniles in lawful custody or under lawful arrest to be admitted to bail or to be held in custody to await further hearings, and the provisions of West Virginia Code § 49–5A–4 (1972) (Repl. Vol. 2001), permitting the circuit judge to modify or vacate such orders at any time. We view the refusal of or admission to bail, with the unlimited and immediate right of review by a circuit judge, as fundamentally different from the power to impose the *punishment* of incarceration for indirect contempts.