No. 24-166 – *City of Huntington, West Virginia, and Cabell County Commission v. AmerisourceBergen Drug Corporation, Cardinal Health, Inc., and McKesson Corporation*

WOOTON, CHIEF JUSTICE, with whom Judge Salango joins, dissenting:

**FILED**

**May 12, 2025**

released at 3:00 p.m.

C. CASEY FOPRBES, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

I respectfully dissent from the majority's refusal to answer the question certified to this Court by the United States Court of Appeals for the Fourth Circuit ("the Fourth Circuit"). The question clearly falls within the parameters of West Virginia Code section 51-1A-3 (2016), which provides that

> [t]he Supreme Court of Appeals of West Virginia may answer a question of law certified to it by any court of the United States or by the highest appellate court or the intermediate appellate court of another state or of a tribe or of Canada, a Canadian province or territory, Mexico or a Mexican state, if the answer may be determinative of *an issue* in a pending cause in the certifying court and if there is no controlling appellate decision, constitutional provision or statute of this state.

(Emphasis added). Here, there is no question that our answer to the first part of the certified question, "[u]nder West Virginia's common law, can conditions caused by the distribution of a controlled substance constitute a public nuisance?", will be determinative of one issue pending before the Fourth Circuit; and further, our answer to the second part of the certified question, "if so, what are the elements of such a public nuisance claim?", will then guide the Fourth Circuit's determination of other issues pending before that court involving fault and causation. In short, nothing in our law compels the conclusion that a certified question must be dispositive of an entire *case*, which appears to be the majority's underlying

1

rationale. Our mandate is to resolve an *issue*, which is exactly what the Fourth Circuit has asked us to do. *See State ex rel. Advance Stores Co. v. Recht*, 230 W. Va. 464, 468–69, 740 S.E.2d 59, 63–64 (2013) ("In the final analysis, this Court will not address a certified question if it is not dispositive of a controlling *issue* in a case.") (emphasis added).

The majority relies upon a case in which this Court declined to answer a certified question on the ground that a certified question should not be considered by this Court "unless the disposition of the case depends wholly or principally upon the construction of law determined by the answer, regardless of whether the answer is in the negative or affirmative." *Bass v. Coltelli*, 192 W. Va. 516, 521, 453 S.E.2d 350, 355 (1994). I find the majority's reasoning to be wholly unpersuasive. First, the *Bass* formulation was not, and has never been, elevated to a syllabus point; in this regard, "we have repeatedly stated, '. . . [n]ew points of law ... will be articulated through syllabus points as required by our state constitution.'" *State ex rel. Vanderra Res., LLC v. Hummel*, 242 W. Va. 35, 42–43, 829 S.E.2d 35, 42–43 (2019) (footnote and citation omitted). Additionally, the formulation, which was adopted wholesale from an inapposite North Dakota case,[1] has no textual support in West Virginia Code section 51-1A-3. Finally, the *Bass* formulation is wholly inconsistent with this Court's routine acceptance of certified questions that come to

---

[1] In *Gelinske v. Farmers Grain & Trading Co.,* 446 N.W.2d 261, 262 (N.D.1989), the Supreme Court of North Dakota based its decision on a certification statute that is very different from ours. *See Bass*, 192 W. Va. at 521 n.4, 453 S.E.2d at 355 n.4.

us in the context of the lower court's rulings on motions to dismiss or motions for summary judgment. In all of those cases, one answer to the question will cause the underlying case to be dismissed, while another answer will allow it to go forward – which is exactly the situation presented here. *See, e.g.*, *State ex rel. Morrissey v. Diocese of Wheeling-Charleston*, 244 W. Va. 92, 94, 851 S.E.2d 755, 757 (2020) (circuit court granted defendant's motion to dismiss and then certified question); *Michael v. Appalachian Heating, LLC*, 226 W. Va. 394, 397-98, 701 S.E.2d 116, 119-20 (2010) (circuit court denied defendant's motion to dismiss and then certified question); *Aikens v. Debow*, 208 W. Va. 486, 490, 541 S.E.2d 576, 579 (2001) (circuit court denied defendant's motion for summary judgment and then certified question); *see also Valentine v. Sugar Rock, Inc*., 234 W. Va. 526, 531, 766 S.E.2d 785, 790 (2014) (Fourth Circuit certified question to this Court where "federal district court and the state circuit court had applied similar precepts of West Virginia law to the identical Ritchie County properties, and yet had reached manifestly irreconcilable outcomes.").

In enacting West Virginia Code section 51-1A-3, the West Virginia Legislature wisely gave this Court a flexible tool for resolving issues such as the one presented in this case. In declining to utilize this tool in order to answer the certified question, this Court could well be viewed as having once again ducked an issue which it has ducked on three previous occasions. *See State ex rel. AmerisourceBergen Drug Corp. v. Thompson*, No. 15-1026 (W. Va. Jan. 5, 2016) (Order refusing petition for writ of

prohibition); *State ex rel. AmerisourceBergen Drug Corp. v. Hummel*, No. 19-0210 (W. Va. June 4, 2019) (Order refusing petition for writ of prohibition); *State ex rel. CVS Pharmacy, Inc. v. Moats*, No. 22-635 (W. Va. Sept. 8, 2022) (Order refusing petition for writ of prohibition). We may never have a better opportunity than the one we are squandering today. The certified question in this case is one of great importance to our State, which has been ravaged by a flood of epic proportions: a flood of opioids which has, over the course of decades, overtaken the capacity of State, county, and municipal institutions and programs to remediate the damage caused in its wake.[2] The petitioners in this case, whose coffers are inadequate to fully effect such remediation, deserve an answer to their overarching question: is there a light at the end of this tunnel?

Additionally, as the Fourth Circuit has recognized, the certified question is one that should be resolved by this Court, not by a federal court taking an "Erie guess"[3] as to how we would resolve it. Although there is case law from other jurisdictions which may

---

[2] As Justice John Hutchison cogently summarized the situation, "[t]o be blunt, the opioid crisis is 'a man-made plague, twenty years in the making. The pain, death, and heartache it has wrought cannot be overstated.'" *State ex rel. AmerisourceBergen Drug Corp. v. Moats*, 245 W. Va. 431, 449, 859 S.E.2d 374, 392 (2021) (Hutchison, J., concurring) (footnote and citation omitted).

[3] *See Am. Comp. Ins. Co. v. Ruiz*, 389 So. 3d 1060, 1061 n.1 (Miss. 2024) ("Taking its name from *Erie Railroad v. Tompkins*, 304 U.S. 64, 58 S. Ct. 817, 82 L.Ed. 1188 (1938), an *Erie* guess occurs when, in the absence of a state statute or caselaw on point, a 'federal court must divine and enforce the rule that it believes this court would choose if the case were pending here.'") (citations omitted).

4

be instructive, or even persuasive, the fact is that none of it deals with West Virginia's unique history as reflected in the evolution of our public nuisance case law.

Taking all of these factors into account, I believe this Court has the duty and responsibility to answer the certified question posed to us by the Fourth Circuit. In that regard, I would answer the first part of the question in the affirmative and provide guidance as to the elements of a public nuisance cause of action as set forth herein. More specifically, I would hold that under West Virginia's longstanding common law, "[a] public nuisance is an act or condition that unlawfully operates to hurt or inconvenience an indefinite number of persons." *Hark v. Mountain Fork Lumber Co.*, 127 W. Va. 586, 595, 34 S.E.2d 348, 354 (1945). Thus, the distribution of a controlled substance as defined in West Virginia Code section 17C-1-68 (2021) is actionable under a public nuisance theory if it causes a condition of widespread harm, meaning that it causes hurt or inconvenience to an indefinite number of persons.

This result would be wholly consistent with our decision in *Sharon Steel Corp. v. City of Fairmont*, 175 W. Va. 479, 334 S.E.2d 616 (1985), where we defined a public nuisance as

> an act or condition that unlawfully operates to hurt or inconvenience an indefinite number of persons. The distinction between a public nuisance and a private nuisance is that the former affects the general public, and the latter injures one

5

> person or a limited number of persons only. Ordinarily, a suit
> to abate a public nuisance cannot be maintained by an
> individual in his private capacity, as it is the duty of the proper
> public officials to vindicate the rights of the public.

*Id*. at 483, 334 SE.2d at 620; *see also Duff v. Morgantown Energy Assoc*., 187 W. Va. 712, 716 n.6, 421 S.E.2d 253, 257 n.6 (1992) (finding that the language in *Hark* "is consistent with the *Restatement (Second) of Torts* § 821(B)(1) (1979), which defines a public nuisance as 'an unreasonable interference with a right common to the general public.'"). This result would also be consistent with the analyses of the various circuit court judges, including judges on the Mass Litigation Panel, who have issued rulings over the past decade upholding the viability of the public nuisance doctrine as a cause of action in opioid litigation.[4] Additionally, this result would be consistent with the position taken by two former Attorneys General who, recognizing that the opioid crisis affected cities and counties all over this State, utilized the public service doctrine as a basis for litigation which ultimately brought millions of dollars of settlement money into the State treasury.

Further, I would adopt, with some modifications, the elements of the cause of action proposed by the plaintiff/petitioners:

1. The condition(s) caused by the defendant's distribution of the controlled substance must interfere with a public right, hurting or inconveniencing an

---

[4] *See* text *supra*, listing cases where defendant have sought to challenge those rulings on petitions for writ of prohibition.

indefinite number of persons. A public nuisance does not lie to compensate individual victims for the harms particular to them;

2. The defendant's conduct in distributing the controlled substance must be unreasonable under the facts and circumstances of the case;

3. The defendant's conduct must be a proximate cause of the harmful condition(s) sought to be redressed; and

4. The relief sought must be abatement of the harmful condition(s), whether by the defendant or by the plaintiff utilizing funding provided by the defendant.[5]

The petitioners are entitled to an answer to the question posed by the Fourth Circuit, and the respondents' argument to the contrary can fairly be deemed cursory at best; it consists of one brief paragraph and a footnote. Unfortunately, the majority has come to the rescue by making the argument the respondents could have made, but did not. I respectfully dissent to the Court's decision to postpone, for the fourth time, a decision on this issue of critical importance. I am authorized to state that Judge Salango joins in this dissenting opinion.

---

[5] In this regard, I am persuaded by the reasoning of the court in *In re Nat'l Prescription Opiate Litig.*, No. 1:17-MD-2804, 2019 WL 4194272, at *3 (N.D. Ohio Sept. 4, 2019): "Unlike tort damages that compensate an injured party for past harm, abatement is equitable in nature and provides a prospective remedy that compensates a plaintiff for the costs of rectifying the nuisance."