ELLIS, Judge.
Plaintiffs herein are the widow and children of the late August Mailhos, who died in St. Tammany Parish on July 5, 1964. Mrs. Mailhos, his widow, had purchased sixteen lots in Covington Cemetery No. 2, being the even numbered lots from 428 through 458, inclusive. Mr. Mailhos was interred in Plots 440 and 442.
Covington Cemetery No. 2 is operated by the City of Covington, which developed and improved it and sold plots therein to private individuals. The City manages the cemetery as well as a mausoleum which has been constructed therein.
On or about April 19, 1964, the Mayor pro-tem of the City of Covington called Victor Osbon, the defendant herein, asking him to install an electric cable from a power pole to the mausoleum. Osbon and the Mayor went to the cemetery together, and the Mayor told him to locate the line at the inside edge of the concrete walk abutting the plots owned by plaintiffs, including the one in which Mr. Mailhos was buried.
Mr. Osbon, using a gasoline powered trenching machine, dug a trench along the indicated line, except at the grave, where he dug the trench by hand. The width of the trench varied from six and one-half inches to twelve inches from the edge of the sidewalk, and at the gravesite varied from six and one-half inches to eight inches. The cable itself was located from two to six and one-half inches from the sidewalk, at depths varying from one foot to one foot eight and one-half inches. At the gravesite, the cable was located from two to three inches from the walk at a depth of one foot six inches. The trench did not in any way disturb Mr. Mailhos’s remains. Mrs. Mailhos attended a funeral at the cemetery the following day, and saw the work which had been done by Mr. Osbon. She became agitated and remained so until her son, August J. Mailhos, returned home that evening. Upon learning the cause of her distress, he went to the cemetery, and on seeing the work done by defendant, became highly incensed. An attorney was retained immediately. Also, within the next few days, a coping was put around Mr. Mailhos’s grave and a headstone placed thereon.
The first of theses two suits was filed on May 5, 1965. The allegations of the petition charge that the defendant had willfully and wantonly violated and desecrated the grave by “running a trench-digging machine or apparatus through the sixteen cemetery plots and through August Mail-hos’s grave.” They asked a total of $86,-000.00 damages for nervous and physical shock, mental anguish, pain, worry and humiliation.
On May 14, 1965, the St. Tammany Farmer, a weekly newspaper published in Covington, ran a front page story on the case, which paraphrased the allegations of the petition. Mr. Osbon took to the paper a denial of the allegations of the story, which had been prepared by his attorney, and which was published on the front page of the Farmer on May 21, 1965. He also took a photograph of the line to the Farmer, which was published as a paid advertisement, accompanied by the following copy, prepared by the Editor of the Farmer:
“Above is a photograph which indicates, by the use of dotted lines, the path taken in excavating a shallow 8-inch trench alongside several lots in Covington Cemetery No. 2 owned by the family of the late August Mailhos. A damage suit for $86,000.00 filed by *110 the Mailhos family contends that Os-bon Electric Contractors crossed the plots without right and desecrated the grave. The picture is intended to show there was no such crossing, and no such desecration as claimed in the suit. The narrow strip between the sidewalk at left and right edge of the trench is said to be city property. At the time the trench was excavated, there was no marble slab over the grave. Because of the mound of earth, no mechanical digging equipment was used here, but the job was performed by use of shovels. No damage was done and the shallow ditch was filled and leveled so that the lots were not disfigured, as noted in the above photo. Except for the grave area, a mechanical ditch digger was used.”
On June 30, 1965, the second of these suits was filed, alleging that the story and photograph constituted a libelous attack on plaintiffs’ characters and reputations, and asking damages totalling $23,500.00.
After trial on the merits, judgment was rendered in the first suit in favor of plaintiffs for $250.00, and the second suit was dismissed.
Defendants have neither appealed nor answered the appeal, so in the first case we are faced only with the question of quantum. It is conceded by defendants that a technical trespass on the property of plaintiffs occurred, and that plaintiffs are entitled to some nominal award. However, it is denied that there was any desecration or violation of the grave, or that plaintiffs are entitled to any award for same.
It is apparent from the evidence that Mr. Osbon was acting on the instructions of the Mayor of'Covington when he located the cable and trench as he did. It is also apparent that he did his best to minimize the damage done to the appearance of the grave by the location of the trench at its edge. A number of photographs, introduced into evidence by both parties, indicate that the damage done to the appearance of the grave is minimal. There is certainly no indication in the record of any malicious intent or wanton violation of the grave by Mr. Osbon.
We do not believe that Mr. Osbon’s actions constitute a desecration of the grave within the meaning of the law. Certainly his conduct in digging the trench shows that such was not his intention. A desecration, generally, is defined as a violation of the sanctity of a place or a profanation thereof. We do not feel that Mr. Os-bon’s actions fall within this definition. See Thomas v. Mobley, 118 So.2d 476 (La.App. 1 Cir.1960). Under all of the circumstances of this case, we feel that the district judge properly awarded nominal damages for the technical trespass which occurred herein.
We are further of the opinion that the district judge properly dismissed the libel and slander action. Once the plaintiffs filed the original suit, the matter became one of public record. Once the newspaper published the story relative to the suit and made the allegations of the petition a part thereof, the matter became one of public knowledge. According to his testimony, Mr. Osbon had been subjected to a good bit of public notoriety and ridicule as a result of the story relative to plaintiff’s original suit. After trial of these matters, both the district court and this court have found Mr. Osbon’s version of the circumstances the more nearly correct of the two. We fail to see how plaintiffs’ reputations could have been damaged thereby.
As stated in the case of Madison v. Bolton, 234 La. 997, 102 So.2d 433 (1958):
“In a general and comprehensive sense, libel is the defamation of a person by the publication of any false and unprivileged writing which tends to expose him to contempt, hatred, ridicule or obloquy ; or which causes him to be shunned or avoided; or which has a tendency to deprive him of the benefits *111 of public confidence or injure him in his occupation; and includes almost any language which upon its face has a natural tendency to injure the person’s reputation, either generally or with respect to his occupation.”
Clearly, Mr. Osbon’s version of the lawsuit, as published by the St. Tammany Farmer, could not be said to be libelous of the plaintiffs.
We note that the judgment rendered by the trial court does not allocate the award to the plaintiffs. The said judgment is therefore amended so as to award the sum of $150.00 to Mrs. Mailhos, and $50.00 to each of the children, and as amended, it is affirmed at appellants’ cost.
Amended and Affirmed.