HOUSTON, Justice.
Rhodes Mutual Life Insurance Company, Inc. (“Rhodes”), appeals from the judgment entered on a $75,000 jury verdict in favor of Robert Moore and George Moore, Jr., in this action to recover damages for the negligent desecration of a grave. We affirm.
Robert Moore and George Moore, Jr., are the great-grandson and the great-great-grandson, respectively, of the late Bob *867 Moore, who died in 1975 and was buried at St. Austin’s Cemetery in Mobile. Rhodes was the owner of the cemetery at the time of the incident made the basis of this action. George Moore, Sr., who is the brother of Robert Moore and the father of George Moore, Jr., chose not to participate in this action, and, although he was present during the trial of the case, he was never made a party.
The material evidence, viewed in the light most favorable to the plaintiffs, as our standard of review requires us to view it, Deupree v. Butner, 522 So.2d 242 (Ala.1988), is aptly summarized in the plaintiffs brief:
“On Easter Sunday of 1987, George Moore Jr., went to St. Austin’s to visit the grave of his great, great grandfather. He was accompanied by ... Mr. Charles Davis. George Moore Jr., was raised in the same house with his great, great grandfather and consequently was very close to him. On this occasion, George Moore Jr., and Charles Davis went to the grave of the late Bob Moore and attempted to pull some weeds that had grown up around the headstone. George Moore described the headstone as being a vertical headstone placed on the ground that stood about eighteen inches high. He further stated that the family, including himself and Robert Moore, all contributed to the initial cost of the headstone.
“Mr. George Moore went on to say that he had the opportunity to return to the cemetery on Mother’s Day, approximately two weeks later.* His uncle, Robert Moore, accompanied him. At one point, the men went to the site where the late Bob Moore’s grave and headstone had been two weeks prior, however, it was nowhere to be found, and instead, two fresh graves were in its place. The cemetery owner/Rhodes Life Insurance [was] contacted and a search for the grave site and headstone was conducted, but no traces were found. The search was visual only, as the Defendant kept no records of the location of any particular individuals.
“The only individual having any knowledge of grave locations was a gravedigger named Lyles. Neither he nor anyone else was able to locate Mr. Bob Moore’s grave site. Mr. Ronald Ali, the vice president of Rhodes Life Insurance, when asked if he thought it was a prudent practice to run a cemetery without keeping records of where the people are buried, answered that ‘he didn’t think so.’ The only person who claimed to know where Mr. Bob Moore was buried was Mrs. Lillian Lovett, a one-time owner of the cemetery. She stated on direct exam that Mr. Bob Moore was buried next to a Mr. Woodrow Jones. A cross-examination of Mrs. Lovett revealed that she was unclear as to why she happened to be able to remember where Mr. Bob Moore was buried, and further .revealed that she could not remember the names of anyone else buried in the alleged vicinity of Mr. Bob Moore’s grave site. To this date, the Defendant cannot tell the Plaintiffs where the grave or headstone of Bob Moore is located.”
Rhodes contends that the trial court erred in denying its motion for a judgment notwithstanding the verdict or, in the alternative, a new trial. It argues (1) that because George Moore, Sr., was alive at the time this action was filed, George Moore, Jr., had no standing to prosecute an action for damages; (2) that George Moore, Sr., who, as previously noted, was not made a party to this action, was an indispensable party under Rule 19, Ala.R.Civ.P.; and (3) that the evidence was insufficient to warrant submitting the negligence claim to the jury.
The plaintiffs argue (1) that George Moore, Jr., had standing to join in this action because of his close relationship to the deceased; (2) that the trial court did not err in determining that George Moore, Sr., was not an indispensable party under Rule 19; and (3) that the evidence was sufficient to create a fact question as to whether Rhodes had negligently caused the desecration of Bob Moore’s grave. We agree.
In Hogan v. Woodward Iron Co., 263 Ala. 513, 83 So.2d 248 (1955), this Court *868 held that the deceased’s daughter could not prosecute an action for damages allegedly resulting from the desecration of the deceased’s grave, where the widow was still alive. The following rule was stated:
“Upon thorough examination of our decisions concerning interference with burial sites, we note that in every case before us the proper parties plaintiff have been the surviving spouse or the next of kin, in order (or the question of proper parties was not raised). Among the cases see Smith and Gaston Funeral Directors, Inc. v. Dean, [262 Ala. 600, 80 So.2d 227 (1955)]; Smith and Gaston Funeral Directors, Inc. v. Wilson, [262 Ala. 401, 79 So.2d 48 (1955)]; Holder v. Elmwood Corp., [231 Ala. 411, 165 So. 235 (1936) ]; Bessemer Land & Improvement Co. v. Jenkins, 111 Ala. 135, 18 So. 565; Bonham v. Loeb, 107 Ala. 604, 18 So. 300. From the foregoing cases and from our consideration of the ties that bind the survivors to the deceased, we conclude the rule applicable to parties plaintiff in a case of this kind to be: In the event of damage to the grave of a deceased person, the right of action, if any, accrues first to the surviving spouse unless, of course, there are special circumstances, such as a failure of the surviving spouse to act, or the couple was separated at the time of death and an heir or next of kin had the deceased interred. See Gostkowski v. Roman Catholic Church, etc., cited infra. If there is no surviving spouse, the right is in the next of kin in the order of their relation to the deceased. The logic of this rule is well stated in a similar New York case wherein the Court of Appeals, through Chief [Judge] Pound, held:
“ ‘As to the son’s case, we conceive the rule to be that the surviving spouse whose duty it is to bury the deceased has the sole right to sue, during his or her lifetime, for damages due to interference with the dead body. To such a one is intrusted the duty to guard the dead. True it may be that he may neglect to exercise such right. Others may then act. Possibly the surviving members of the deceased’s family might join as plaintiffs (Boyle v. Chandler, 3 W.W. Harr. 323 [33 Del. 323], 138 A. 273), but it is inconceivable that each member of the family could maintain a separate action to recover for mental pain and anguish. In the multitude of such actions there is injustice. The son, therefore, had no cause of action. The complaint was properly dismissed. Const, art. VI, § 8.’ Gostkowski v. Roman Catholic Church, etc., 262 N.Y. 320, 325, 186 N.E. 798, 800.
“This rule also prevails in Kentucky: Johnson v. Kentucky-Virginia Stone Co., 286 Ky. 1, 149 S.W.2d 496; North East Coal Co. v. Pickelsimer, 253 Ky. 11, 68 S.W.2d 760.
“The rule above stated is consonant with this court’s expressions as to the right of action for unlawful interference with the burial of deceased relatives. Southern Life & Health Ins. Co. v. Morgan, 21 Ala.App. 5,105 So. 161, certiorari denied, 213 Ala. 413, 105 So. 168; Jefferson County Burial Soc. v. Scott, 218 Ala. 354, 118 So. 644.”
263 Ala. at 515, 83 So.2d at 249.
The rule stated in Hogan clearly contemplates that when there is no surviving spouse, as in this case, the right to bring an action for the desecration of a grave vests in the next of kin in the order of their relation to the deceased; and that all individuals occupying the same degree of kin should join in the action so as not to subject the defendant to the risk of a multitude of different actions. See, also, Holleman v. Elmwood Cemetery Corp., 295 Ala. 267, 327 So.2d 716 (1976). However, we do not think that this rule should be applied so narrowly as to automatically preclude a more distant relative of the deceased, who had had a very close and intimate relationship with the deceased, from joining in an action with a member of the deceased’s family closer in relation to the deceased. In Levite Undertakers Co. v. Griggs, 495 So.2d 63, 65 (Ala.1986), this Court, rejecting the defendants’ contention that only the closest living relative could *869 maintain an action for the wrongful detention of remains, noted that the plaintiffs (the widow and two children) were not fighting among themselves for possession of the remains, but, instead, stood “united against their common antagonists — each equally suffering injury under their hands.” We note that other courts have also recognized that the rule of priority enunciated in Hogan should be applied with reason. Those courts have stressed that the particular circumstances of the case should be examined to see whether there had been a special intimacy or association between the plaintiff and the defendant. See, e.g., Sullivan v. Catholic Cemeteries, Inc., 113 R.I. 65, 317 A.2d 430, 433 (1974) (“This rule of priority is to be applied with reason. It is flexible and may be modified by circumstances of the moment.”); North East Coal Co. v. Pickelsimer, 253 Ky. 11, 68 S.W.2d 760 (1934) (cited by this Court in Hogan) see, also, 22A Am.Jur.2d Dead Bodies § 25 (1988) and the cases collected at n. 23; 77 A.L.R. 4th Desecration of Grave, § 108, § 152 (1990).
In the present case, the close relationship between George Moore, Jr., and his great-great-grandfather is best illustrated by the testimony of George Moore, Jr., at trial:
“Q. Mr. Moore, you’re testifying essentially that you’re — you moved into a home place with your [great-great-] grandfather, correct?
“A. Right. He was — when the house was finished and we moved in, he was brought out there also.
“Q. Okay. And how old was he at that time? Was he elderly?
“A. Yes. He was — let’s see, that was in ’63, Dad [Bob Moore] was in his seventies, I believe.
“Q. Okay. Was he more or less the patriarch of the Moore family?
“A. Yes, because my grandfather was a seaman and he was barely — he was gone nine months out of the year and my father, being in the military, he was gone just about eleven months out of the year.
“Q. So, he [Bob Moore] was, more or less, the dominant male figure in the Moore family? Is that correct?
“A. Yes, he was.
“Q. Okay. Now, was — when you say you lived in the same house with him, did you share a bedroom with this man?
“A. Yes, we did.
“Q. Okay. And, so, did you have a constant interaction with your [great-great-] grandfather over the years?
“A. Every day. Every day. Every day when I came home from school he was sitting in the living room. Sitting in a chair waiting to greet me. Ask me what did I do during the day. What happened at school? He was interested in everything about us. And, we talked—
[[Image here]]
“Q. Mr. Moore, you looked — did you look to this man as your father figure?
“A. Yes.
“Q. Okay. And you say he helped you with your homework?
“A. Yes.
“Q. Okay.
“A. Made sure that we did it.
“Q. Okay. Do you recall [receiving] any other type of instructions from this man as you grew up?
“A. Oh, all the time. Do everything your mother tells you to do. Your grandmother, that is. Help around the house. Keep the room clean and also had to help—
[[Image here]]
“Q. Right. At night, before you went to bed, what is your recollection of this gentleman?
“A. Oh, Dad made sure I said my prayers every night. He went to bed early and basically I was right behind him. He went to bed about 8:00 and I was in bed about 8:15 or 8:30.
“Q. All right. As you approached your adolescence or adulthood, Mr. Moore, do you recall any other memories of your [great-great-] grandfather about things you might have done with him or things that you remember?
[[Image here]]
*870 “A. Basically, Dad would, he was trying to help me count. And, basically, any money that Dad had, coins, he would set them out and if I could count the money, I could keep it. And most times, I made a mistake here and there, but he would help me and go over it and over it, and then finally he wanted me to keep the money anyway and I would.
“Q. Did he ever tell you anything, about alcohol or smoking cigarettes or anything like that?
“A. Just basically stay away from the different things. But, when I was a kid, I had my first drink and it was—
[[Image here]]
“Q. You’re saying you had your first drink in the presence of your [great-great-] grandfather?
“A. I did.
“Q. Okay. And did he give you advice toward alcohol, that sort of thing?
“A. I’d rather you try a sip here than go out in the streets with your friends and get drunk not knowing what’s going on and end up in trouble, because no one in our family had ever been arrested.
“Q. Okay. Now, Mr. Moore did you have the occasion at some point in your life after you became a grown man to move away from the family home place?
“A. Yes, I did.
“Q. Okay. When was that?
“A. In 1972 through ’75.
“Q. Okay. So, how old [were] you then when you left?
“A. Eighteen.
“Q. Okay. So you had lived with him for — basically since you were nine years old—
“A. Right.
“Q. Until you were eighteen and shared the same room with him?
“A. Yes.
[[Image here]]
“Q. Okay. Did you have occasion, ... when you came back to Mobile, to visit with your grandfather?
“A. Yes, he was in a nursing home at that time.
“Q. When I say your grandfather, I’m referring to Dad.
“A. Great-great-grandfather.
“Q. You’re referring to Mr. Bob Moore, your great-[great-] grandfather, as Dad, right?
“A. Dad. Right.
“Q. All right. Did you have occasion to visit with him in the nursing home?
“A. Yes.
“Q. Okay. And what sort of things did you do for him when you went by there to see him in the nursing home?
“A. I used to shave him. I used to cut his fingernails and toenails.”
We hold that under the facts of this case, the trial court did not err in allowing George Moore, Jr., to join his uncle in this action. The amount of damages (i.e., for mental suffering and distress) actually suffered by George Moore, Jr., was a question for the jury.
Rule 19 provides, in pertinent part, as follows:
“(a) Persons to Be Joined if Feasible. A person who is subject to jurisdiction of the court shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest. If he has not been so joined, the court shall order that he be made a party. If he should join as a plaintiff but refuses to do so, he may be made a defendant, or, in a proper case, an involuntary plaintiff. If the joined party objects to venue and his joinder would render the venue of the action improper, he shall be dismissed from the action.
“(b) Determination by Court Whenever Joinder Not Feasible. If a person as described in subdivision (a)(l)-(2) hereof cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or *871 should be dismissed, the absent person being thus regarded as indispensable. The factors to be considered by the court include: first, to what extent a judgment rendered in the person’s absence might be prejudicial to him or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person’s absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.”
Rhodes argues that George Moore, Sr., was an indispensable party to this action and, therefore, that the judgment should be reversed and the case remanded for the join-der of George Moore, Sr., and a new trial. The thrust of Rhodes’s argument is that the failure to join George Moore, Sr., has resulted in its being exposed to the risk of another action for damages by George Moore, Sr. We disagree.
In Whisman v. Alabama Power Co., 512 So.2d 78, 82-83 (Ala.1987), this Court, quoting Century 21 Preferred Properties, Inc. v. Alabama Real Estate Commission, 401 So.2d 764, 770 (Ala.1981), stated:
“ ‘Under the doctrine of res judicata, a judgment on the merits in a prior suit bars a second suit involving the same parties or their privies. Parklane Hosiery Co. v. Shore, 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979). Res judicata applies where the parties to both suits are ‘substantially identical.’ Wheeler v. First Alabama Bank of Birmingham, [364 So.2d 1190 (Ala.1978) ]; Astron Industrial Associates, Inc. v. Chrysler Motors Carp., 405 F.2d 958, 961 (5th Cir. 1968).
“ ‘Judgments can bind persons not party (or privy) to the litigation in question where the nonparties’ interests were represented adequately by a party in the original suit. Southwest Airlines Co. v. Texas International Airlines, 546 F.2d 84, 94-95 (5th Cir.1977). A person may be bound by a judgment even though not a party to a suit if one of the parties to the suit is so closely aligned with his interests as to be his virtual representative. Aerojet-General Corporation v. Askew, 511 F.2d 710, 719 (5th Cir.1975). Moreover, if a party has a “sufficient ‘laboring oar’ in the conduct” of the litigation, then the principle of res judicata can be actuated. Montana v. United States, 440 U.S. 147, 155, 99 S.Ct. 970, 974, 59 L.Ed.2d 210 (1979).’ ”
The record indicates that George Moore, Sr., made a conscious decision to allow his brother and his son to prosecute this action on his behalf. He was present during the trial and he apparently was very interested in its outcome. From our review of the record, we conclude that the trial court could have determined that Robert Moore and George Moore, Jr., were so closely aligned with the interest of George Moore, Sr., as to be his virtual representatives in this action. We also note that George Moore, Jr., testified during the trial that any money recovered in this action would be used to establish a scholarship fund at a local community college in the name of Bob Moore. We assume (and the trial court could have also) that had George Moore, Sr., wanted to seek damages for his own mental suffering resulting from the desecration of his great-grandfather’s grave, he would have joined in this action. His decision not to join in this action strengthens our conclusion that he was content to allow his brother and his son to seek the remedy that they each apparently desired — money damages with which to establish a scholarship fund in remembrance of Bob Moore. Accordingly, we hold that the doctrine of res judicata would be available as an affirmative defense to Rhodes in the event that George Moore, Sr., were to file an action based on the facts of this case, and, therefore, that the trial court did not err in ruling that George Moore, Sr., was not an indispensable party to this action under Rule 19.
This action was not pending on June 11,1987; therefore, the applicable standard for reviewing the sufficiency of the evidence is the “substantial evidence rule.” Ala.Code 1975, § 12-21-12. “Substantial evidence” is “evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.” West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, *872 871 (Ala.1989). This is a confusing case, with much conflicting evidence. However, viewing the evidence in the light most favorable to the plaintiffs, as our standard of review requires us to view it, we cannot say that Rhodes was entitled to a judgment as a matter of law. The tendencies of the evidence were such that the jury could have found that Bob Moore was buried in St. Austin’s Cemetery; that his grave site was marked with a gravestone; that his gravestone was removed and carried away; that new graves are now located on or about his grave site; and that his grave was disturbed while Rhodes owned the cemetery. Whether Rhodes, acting through its agents, negligently caused the desecration of Bob Moore’s grave was a question properly reserved to the jury; therefore, the trial court properly denied Rhodes’s motion for a judgment notwithstanding the verdict.
For the foregoing reasons, the judgment is affirmed.
AFFIRMED.
HORNSBY, C.J., and MADDOX, SHORES and KENNEDY, JJ., concur.

 We note that Easter Sunday 1987 was April 19 and that Mother’s Day was May 10.