704 S.E.2d 663

**Cora Phillips HAIRSTON, et al., Plaintiffs Below, Appellants**

v.

**GENERAL PIPELINE CONSTRUCTION, INC., et al., Defendants/Third–Party Plaintiffs Below**

v.

**Mountain State Insurance Company, Third–Party Defendant Below.**

No. 35525.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 22, 2010.

Decided Nov. 18, 2010.

Daniel R. Schuda, Lynnette Simon Marshall, Schuda & Associates PLLC, Charleston, WV, for Defendant/Third–Party Plaintiff.

Kevin W. Thompson, David R. Barney, Jr., Thompson Barney, Williamson, WV, for Plaintiffs, Cora Phillips Hairston, et al.

Brian R. Swiger, Rodney W. Steiger, Ryan E. Voelker, Jackson Kelly PLLC, Charleston, WV, for Defendant, Equitable Production.

Kevin A. Nelson, Patrick T. White, Huddleston Bolen LLP, Charleston, WV, for Third–Party Defendant, Mountain State Insurance.

McHUGH, Justice:

This matter comes before this Court upon a request from the Circuit Court of Logan County to answer five certified questions regarding the law of grave desecration in West Virginia and the effect of West Virginia Code § 29–1–8a (1993) on the common law of grave desecration. Upon thorough review of the briefs, arguments, record, and applicable precedent, this Court answers the certified questions, as reformulated, and remands this matter for further proceedings consistent with this opinion.

## I. Factual and Procedural History

In the action underlying these certified questions, Equitable Production Company (hereinafter "Equitable") hired General Pipeline Company (hereinafter "General Pipeline") in 2004 to relocate a gas pipeline on a large tract of wooded, unimproved land in Crystal Block Hollow in Logan County, West Virginia. At several different locations along the pipeline, General Pipeline used a small bulldozer to pull a truck loaded with pipe through wooded sections to the pipeline. On August 7, 2004, at the location which has

become the subject of the underlying litigation, the bulldozer was driven, with its blade raised off the ground, through an area containing grave sites. This wooded area contained graves that allegedly were not indicated on any map, reserved or otherwise identified in a deed, identified by any obvious sign, included on a list of grave sites maintained by any State agency, or otherwise reasonably identifiable as an area containing graves. The defendants contend that the area was significantly overgrown with vegetation and contained mostly unmarked grave sites. Some actual grave markers were buried in forest debris. When the operator of the bulldozer realized that the bulldozer had passed through the grave site area, he immediately blocked off the area and relocated the route to connect with the pipeline at a different location.

The fifteen plaintiffs, as relatives of the decedents buried in the graves, filed complaints in the Circuit Court of Logan County, seeking recovery of damages for grave desecration.[1] General Pipeline and Equitable were the original defendants in this litigation, and General Pipeline later filed a third-party complaint against Mountain State Insurance Agency, Inc., asserting a claim of negligence in the procurement of General Pipeline's insurance policy. Subsequent to the exchange of written discovery, General Pipeline filed a Motion for Summary Judgment. Based upon the issues raised in the litigation, the lower court entered an order on November 16, 2009, certifying the following five questions to this Court.

1. Does W.Va.Code § 29–1–8a preempt a common law cause of action for direct or indirect desecration of a grave?

Answer of the lower court: Yes, except as to claims for the desecration of graves and related items in a publicly or privately maintained cemetery or of graves less than fifty years old.

2. What are the elements of a common law action for desecration of a grave, grave site, cemetery or burial ground?

Answer of the lower court: The elements of a common law cause of action for the desecration of a grave in a publicly or privately maintained cemetery are:

1. that it is shown that a cemetery, with identifiable boundaries and limits, exists at the place alleged;

2. that it is shown that the area was dedicated to the purpose of providing a place of burial by the owner of the property or that the owner acquiesced in its use for burial;

3. that it is shown that the area was identifiable as a cemetery by its appearance prior to the defendant's entry onto the area or it is shown that the defendant had prior knowledge of the existence of the cemetery;

4. that it is shown that the decedent in question is interred in the area;

5. that it is shown that the decedent in question was interred by license or right;

6. that it is shown that the plaintiff is the next of kin of the decedent in question with the right to assert a claim for desecration;

7. that it is shown that the person charged with the desecration defaced, damaged or otherwise mistreated the physical area or the contents of the cemetery in a way that a reasonable person knows will outrage the sensibilities of others.

3. What are the recoverable damages in a common law action for desecration of a

---

1. The lower court consolidated the actions of the plaintiffs. Other relief that was sought includes the request that the defendants be ordered to take action to prevent further desecration of the area by ATV traffic; pay punitive damages for alleged intentional, reprehensible conduct; and cease operation of the gas pipeline until it is moved to a location at least 500 feet from the area of the grave sites. The plaintiffs have identified over thirty decedents allegedly buried on this property. Of these decedents, the plaintiffs claim relationships to seventeen, including that of grandfather, grandmother, father, mother, aunt, uncle, sister, brother, nephew, friend, distant relative, and mother's first husband. Although six of the plaintiffs claim that their decedent is buried directly beneath the path of the bulldozer and two other plaintiffs state that they believe their decedent could be buried beneath the path of the bulldozer, plaintiffs' expert has been unable to locate any grave shaft directly under the path taken by the bulldozer.

grave, grave site, cemetery or burial ground?

Answer of the lower court: Nominal damages at least, are awardable, and compensatory damages may be recovered if actual damage is shown; damages for mental distress may be awarded; and punitive damages may be awarded if a plaintiff can prove that the defendants' conduct was willful, wanton, reckless or malicious.

4. Does West Virginia recognize a common law cause of action for indirect desecration of a grave, grave site, cemetery or burial ground? If so, what are the elements of such a cause of action and what are the recoverable damages?

Answer of the lower court: A cause of action for the indirect desecration of a grave site located in a publicly or privately maintained cemetery is permitted in West Virginia. The elements of such a cause of action are the same as those identified in the Answer to Question 2, above, plus: It must be shown that the indirect desecration has, in some manner, affected the specific grave site made the subject of the claim in such a manner as to outrage the sensibilities of others.

5. Who are the "next of kin" who possess the right to recover in a common law cause of action for direct or indirect desecration of a grave?

Answer of the lower court: The decedent's surviving spouse or, if not now living, then the now living person or persons of closest and equal degree of kinship in the order provided by West Virginia Code § 42–1–1, et seq.

By order entered March 30, 2010, this Court accepted the certified questions for review.

## II. Standard of Review

■ This Court has consistently held that "[t]he appellate standard of review of questions of law answered and certified by a circuit court is *de novo*." Syl. Pt. 1, *Gallapoo v. Wal-Mart Stores, Inc.*, 197 W.Va. 172, 475 S.E.2d 172 (1996); *see also* Syl. Pt. 1, *Robin-*

*son v. Pack*, 223 W.Va. 828, 679 S.E.2d 660 (2009); Syl. Pt. 1, *Copier Word Processing Supply, Inc. v. WesBanco Bank, Inc.*, 220 W.Va. 39, 640 S.E.2d 102 (2006). Accordingly, we give plenary consideration to the legal issues to be resolved in answering the questions herein certified.

## III. Discussion

■ Prior to addressing the legal issues raised in the certified questions, this Court will reformulate the questions presented. *See* W. Va.Code § 51–1A–4 (1996) (Repl.Vol. 2008) ("The Supreme Court of Appeals of West Virginia may reformulate a question certified to it."); *see also* Syl. Pt. 3, *Kincaid v. Mangum*, 189 W.Va. 404, 432 S.E.2d 74 (1993); *Potesta v. United States Fidelity & Guaranty Co.*, 202 W.Va. 308, 504 S.E.2d 135 (1998). As this Court recognized in *City of Fairmont v. Retail, Wholesale, & Department Store Union*, 166 W.Va. 1, 283 S.E.2d 589 (1980), this Court needs not address the certified questions in precisely the language through which they were certified. "[U]pon receiving certified questions we retain some flexibility in determining how and to what extent they will be answered." 166 W.Va. at 3–4, 283 S.E.2d at 590. In order to clearly address the legal issues of statutory preemption and common law cause of action presented herein, this Court finds it necessary to reformulate the questions as follows:

1. Does West Virginia Code § 29–1–8a preempt a common law cause of action for direct or indirect desecration of a grave?

2. Does a common law cause of action for direct and/or indirect grave desecration exist, and, if so, what are the elements of such actions and the damages recoverable?

3. Who are the "next of kin" who possess the right to recover in a common law cause of action for grave desecration?

### A. Statutory Preemption of State Common Law

West Virginia Code § 29–1–8a (1993),[2] enacted within legislation regarding the admin-

---

**2.** The statute was amended in 2010. However, the 1993 version of the statute was in effect at the time of the occurrence of the alleged viola-

tions at issue in this case; thus, the 1993 version will be quoted herein. The primary notable alteration in 2010 was the addition of subsection

istration of the Division of Culture and History, recognizes "a real and growing threat to the safety and sanctity of unmarked human graves in West Virginia...." The statute specifies that "the existing laws of the state do not provide equal or adequate protection for all such graves" and observes as follows: "As evident by the numerous incidents in West Virginia which have resulted in the desecration of human remains and vandalism to grave markers, there is an immediate need to protect the graves of earlier West Virginians from such desecration."

The legislature provided that the statute was "not intended to interfere with the normal activities of private property owners, farmers, or those engaged in the development, mining or improvement of real property." W. Va.Code § 29–1–8a(a). The prohibitions provided by the statute include, in pertinent part, as follows:

> No person may excavate, remove, destroy, or otherwise disturb any historic or prehistoric ruins, burial grounds, archaeological site, or human skeletal remains, unmarked grave, grave artifact or grave marker of historical significance unless such person has a valid permit issued to him or her by the Director of the Historic Preservation Section....

> A person who, either by himself or through an agent, *intentionally* excavates, removes, destroys or otherwise disturbs any historic or prehistoric ruins, burial grounds or archaeological site, or unmarked grave, grave artifact or grave marker of historical significance without first having been issued a valid permit by the Director of the Historic Preservation Section, or who fails to comply with the terms and conditions of such permit, is guilty of a misdemeanor, and, upon conviction, shall be fined not less than one hundred dollars nor more than five hundred dollars, and may be imprisoned in the county jail for not less than ten days nor more than six months or both fined and imprisoned.

(c)(7), providing "a complete defense ... if the defendant can prove by a preponderance of the evidence that the alleged acts were accidental or inadvertent and that reasonable efforts were

> A person who, either by himself or through an agent, *intentionally* excavates, removes, destroys or otherwise disturbs human skeletal remains of historical significance without first having been issued a valid permit by the Director of the Historic Preservation Section, or who fails to comply with the terms and conditions relating to disinterment or displacement of human skeletal remains of such permit, is guilty of the felony of disinterment or displacement of a dead human body or parts thereof under section fourteen, article eight, chapter sixty-one of this code and, upon conviction, shall be confined in the state penitentiary not less than two nor more than five years.

W. Va.Code § 29–1–8a(c)(1) (emphasis supplied).

Of the various definitions provided by the statute, it is necessary to recognize particular attributes which provide the essential framework for an understanding of the scope of the statute. For instance, the definition of an "unmarked grave" is limited and is specified as "any grave or location where a human body or bodies have been buried or deposited *for at least fifty years and the grave or location is not in a publicly or privately maintained cemetery or in the care of a cemetery association, or is located within such cemetery or in such care and is not commonly marked* [.]" W. Va.Code § 29–1–8a(b)(2) (emphasis supplied). Likewise, the definition of "disturb" is listed as "excavating, removing, exposing, defacing, mutilating, destroying, molesting, or desecrating in any way of human skeletal remains, unmarked graves, grave artifacts or grave markers[.]" W. Va.Code § 29–1–8a(b)(6).

The statute also provides certain other penalties for violation, as follows:

> Persons convicted of any prohibited act involving the excavation, removal, destruction, disturbance or offering for sale or exchange of historic or prehistoric ruins, burial grounds, archaeological site, human skeletal remains, unmarked grave, grave

made to preserve the remains accidentally disturbed or discovered, and that the accidental discovery or disturbance was properly reported."

artifact or grave marker under the provisions of subdivisions (1) and (2), subsection (c) of this section shall also be liable for civil damages to be assessed by the prosecuting attorney in consultation with the Director of the Historic Preservation Section.

Civil damages may include:

(i) Forfeiture of any and all equipment used in disturbing the protected unmarked graves or grave markers;

(ii) Any and all costs incurred in cleaning, restoring, analyzing, accessioning and curating the recovered material;

(iii) Any and all costs associated with recovery of data, and analyzing, publishing, accessioning and curating materials when the prohibited activity is so extensive as to preclude the restoration of the unmarked burials or grave markers;

(iv) Any and all costs associated with restoring the land to its original contour or the grave marker to its original condition;

(v) Any and all costs associated with reinterment of the human skeletal remains; and

(vi) Any and all costs associated with the determination and collection of the civil damages.

When civil damages are recovered, the proceeds, less the costs of the prosecuting attorney associated with the determination and collection of such damages, shall be deposited into the Endangered Historic Properties Fund and may be expended by the Commissioner of Culture and History for archaeological programs at the state level, including the payment of rewards for information leading to the arrest and conviction of persons violating the provisions of subdivisions (1) and (2), subsection (c) of this section.

W. Va.Code § 29–1–8a(g)(2).

This Court's review of the statute discloses a clear legislative intent to preempt common law desecration claims with respect to the narrowly-defined matters identified and covered by the statutory protection. The statutory language, as referenced above, specifically states the legislature's intention, as follows: "The Legislature finds that there is a real and growing threat to the safety and sanctity of unmarked human graves in West Virginia and the existing laws of the State do not provide equal or adequate protection for all such graves." W. Va.Code § 29–1–8a(a). In *State ex rel. Riffle v. Ranson*, 195 W.Va. 121, 464 S.E.2d 763 (1995), this Court explained that the proper "approach to any statutory construction issue after the Legislature adopts explicit limitations to a preexisting common law rule must be to decide initially whether the Legislature preempted the field and thereby left any room for judicial discretion." 195 W.Va. at 125, 464 S.E.2d at 767.

■ The particularized statement of purpose adequately indicates the legislature's intentions, and this Court holds that West Virginia Code § 29–1–8a preempts common law with respect to the matters specifically addressed in the statute. The statute preempts all common law claims involving "historic or prehistoric ruins, burial grounds, archaeological site, or human skeletal remains, unmarked grave, grave artifact or grave marker of historical significance." W. Va.Code § 29–1–8a(c)(1). The statute clearly provides that any unmarked grave, defined as a grave over fifty years old *not* in a publicly or privately maintained cemetery *or* a "not commonly marked" grave over fifty years old in a maintained cemetery, will be encompassed within the statutory coverage. Grave markers are included in the statutory protection only if they are "of historical significance." *Id.*

■ The preemptive effect of the statute applies only to the narrowly-defined categories of graves and other related items that the statute delineates. Thus, common law is not preempted by the statute where the legislature has not specified statutory protection in West Virginia Code § 29–1–8a. Common law civil remedies remain available in grave desecration cases where the grave is not subject to this statutory protection. Criminal penalties are also available under West Virginia Code § 61–8–14 (2010). Interestingly, West Virginia Code § 61–8–14(b)(3) provides that desecration "means destroying, cutting, mutilating, effacing, injuring, tearing

down, removing, defacing, damaging or otherwise physically mistreating *in a way that a reasonable person knows will outrage the sensibilities of persons likely to observe or discover his or her actions.*" W. Va.Code § 61–8–14(b)(3) (emphasis supplied). West Virginia Code § 29–1–8a does not provide a definition of desecration.

### B. Common Law Cause of Action for Grave Desecration and Damages Available

The common law cause of action available for desecration of those graves not encompassed within West Virginia Code § 29–1–8a remains viable. The parameters of such a common law cause of action have developed in distinct contexts as this Court has addressed specific situations. A primary paradigm for a common law grave desecration cause of action emerges through an analysis of those prior cases.

In *Ritter v. Couch,* 71 W.Va. 221, 76 S.E. 428 (1912), this Court addressed the issue of a common law action for grave desecration and recognized that an action in equity lies for desecration of a grave which has been dedicated for cemetery purposes. 71 W.Va. at 228, 76 S.E. at 430. The sanctity of a cemetery and the need for a cause of action to recover damages for desecration were succinctly observed by the *Ritter* Court, as follows:

> If relatives of blood may not defend the graves of their departed[,] who may? Always the human heart has rebelled against the invasion of the cemetery precincts; always has the human mind contemplated the grave as the last and enduring resting place after the struggles and sorrows of this world.

71 W.Va. at 227, 76 S.E. at 430.

■ A more specific analysis was accomplished in *England v. Central Pocahontas Coal Co.,* 86 W.Va. 575, 104 S.E. 46 (1920), wherein this Court held that near

relatives of a decedent may maintain a cause of action for damages for desecration of a grave or body because the bodily remains are accorded a type of property right.[3] The *England* Court also noted that, "[g]enerally, a cemetery lot in the country is a notable object and has well defined boundaries and is easily identified." 86 W.Va. at 580, 104 S.E. at 48. In syllabus point one of *England,* this Court held:

> While strictly considered there is no right of property in a dead body, nevertheless the right to bury a corpse and preserve the remains is a legal right, which in this country is regarded as a quasi right in property, the violation of which is cognizable in and may be redressed at the suit of near relatives by an action on the case against the wrongdoer.

In pertinent part of syllabus point two of *England,* this Court explained: "Whether such right of burial exists by deed or by mere license, so long as it exists and is not lawfully revoked or destroyed, it may be ... redressed and protected in our courts[.]"[4]

■ In *Whitehair v. Highland Memory Gardens, Inc.,* 174 W.Va. 458, 327 S.E.2d 438 (1985), this Court addressed a situation in which the defendant had obtained permission to disinter and rebury certain bodies due to highway construction. The defendant was eventually accused of negligence in the handling of the bodies. In syllabus point three of *Whitehair,* this Court stated that "[a] cause of action for negligent or intentional mishandling of a dead body does not require a showing of physical injury or pecuniary loss. Mental anguish is a sufficient basis for recovery of damages."

In syllabus point three of *In re Hillcrest Memorial Gardens,* 146 W.Va. 337, 119 S.E.2d 753 (1961), this Court enunciated a defining characteristic of a cemetery as an area "set apart," explaining as follows:

> A cemetery is a place where dead bodies of human beings are buried; an area of

---

**3.** The *England* Court used a definition of desecration found in *Mailhos v. Osbon,* 201 So.2d 108 (La.Ct.App.1967): "A desecration, generally, is defined as a violation of the sanctity of a place or a profanation thereof." 201 So.2d at 110.

**4.** *See also* Syl. Pt. 1, *Sherrard v. Henry,* 88 W.Va. 315, 106 S.E. 705 (1921), ("Equity has jurisdiction to restrain the removal of or interference with the remains of the dead rightfully buried in a cemetery.").

ground *set apart* for the burial of the dead, *either by public authority or private enterprise.* It includes not only lots for depositing the bodies of the dead, but also such avenues, walks and grounds as may be necessary for its use, or for shrubbery and ornamental purposes.

146 W.Va. at 338, 119 S.E.2d at 754, Syl. Pt. 3 (emphasis supplied).

In *Bennett v. 3 C Coal Co.*, 180 W.Va. 665, 379 S.E.2d 388 (1989), the plaintiff had sought damages for surface cracks in grave sites allegedly incurred through mine subsidence. The *Bennett* Court found that "a cause of action will lie for the unlawful desecration of a grave site even though no disturbance of the body interred therein can be shown." 180 W.Va. at 670, 379 S.E.2d at 393. Further, the *Bennett* Court found that "damages for mental distress may be recovered by the next of kin for the disturbance or desecration of a relative's grave." *Id.* at 671, 379 S.E.2d at 394. The Court rejected the contention that damages for mental distress were not available for the unlawful disturbance of a grave site where no physical disturbance of the body could be demonstrated, recognizing that family members will generally suffer mental distress if either the bodies or the grave sites are desecrated. *Id.* The potential for punitive damages was also discussed, and the *Bennett* Court applied the traditional rule that punitive damages would be available upon proof that the defendant engaged in "a wilful, wanton, reckless or malicious act." *Id.* (internal citations omitted).

This Court thereafter addressed allegations of grave desecration in connection with logging and strip mining in *Concerned Loved Ones and Lot Owners Association of Beverly Hills Memorial Gardens v. Pence*, 181 W.Va. 649, 383 S.E.2d 831 (1989). In *Pence*, this Court reiterated the established principle

that a cemetery is properly characterized as a land set aside and dedicated for the specific purpose of a cemetery. The *Pence* Court explained that "[t]he intention of the owner of the land to dedicate it for a public cemetery, together with the acceptance and use of the same by the public, or the consent and acquiescence of the owner in the long-continued use of his lands for such purpose" is sufficient to evidence a proper dedication. 181 W.Va. at 654, 383 S.E.2d at 836–37 (quoting 14 Am.Jur.2d *Cemeteries* § 14 (1964)).

The *Pence* Court also discussed damages potentially available to the plaintiffs, explaining that the plaintiffs may be entitled to "compensatory or only nominal [damages], depending upon the nature of the harmful acts as the evidence at trial demonstrates." 181 W.Va. at 656, 383 S.E.2d at 838. The *Pence* Court noted as follows: "It has been held that in this type of action, nominal damages at least, are awardable, and compensatory damages may be recovered if actual damage is shown." *Id.* As in *Bennett*, the *Pence* Court found that "punitive damages may be recovered in this case if the plaintiffs can prove that the defendants' conduct was willful, wanton, reckless, or malicious." *Id.* The potential for recovery of damages for mental distress for the disturbance or desecration of the graves was again recognized.

In its order certifying questions to this Court in the present case, the lower court accurately recognized that the gradual development of the common law of West Virginia on the issue of grave desecration has not generated precise elements of the tort, focusing instead upon the rights of a plaintiff in a specific factual scenario. In the situation of these certified questions, we are faced with a much broader request than has previously been addressed in more fact-specific inquiries.[5] As the Court of Appeals of New York aptly recognized when confronted with

---

[5] This Court must also be mindful of the limitations inherent within the context of responses to certified questions. As this Court recognized in *Bass v. Coltelli*, 192 W.Va. 516, 453 S.E.2d 350 (1994), *superseded by statute on other grounds*, *Smith v. Consol. Public Retirement Bd.*, 222 W.Va. 345, 664 S.E.2d 686 (2008), "[o]nly those questions should be certified up before judgment which bring with them a framework sufficient to allow this Court to issue a decision which will be

pertinent and inevitable in the disposition of the case below." 192 W.Va. at 521, 453 S.E.2d at 355 (quoting *State, Agency of Transp. v. City of Winooski*, 147 Vt. 649, 520 A.2d 998, 999 (1986)). The factual development of the underlying litigation is quite limited, and this Court is necessarily reticent to even tangentially address any factual question to be determined by proper means upon remand.

an issue requiring evaluation of historic development of common law regarding improper use of body parts of a deceased person, "this inquiry cannot possibly yield answers with perfect congruity considering the different context in which common-law courts dealt with this subject. Although the case before us is unprecedented, the common law offers enough guidance for us to answer the question confidently." *Colavito v. New York Organ Donor Network, Inc.*, 8 N.Y.3d 43, 827 N.Y.S.2d 96, 860 N.E.2d 713, 717 (2006).

■ Throughout this Court's evaluation of grave desecration matters, certain intrinsic principles have emerged. A prerequisite to common law recovery has consistently been a showing that the land upon which the decedents are buried is an actual cemetery, with identifiable boundaries or limits.[6] Moreover, it must be recognized that in order to prove a claim of negligence, the defendant's violation of a duty owed to the plaintiff must be demonstrated. " 'Negligence is the violation of the duty of taking care under the given circumstances. It is not absolute; but is [always] relative to some circumstance of time, place, manner, or person.' *Dicken v. Liverpool Salt & Coal Co.*, 41 W.Va. 511, 23 S.E. 582 (1895)." Syl. Pt. 2, *Honaker v. Mahon*, 210 W.Va. 53, 552 S.E.2d 788 (2001).

■ In delineating the elements of a common law cause of action for grave desecration, the lower court identified requirements gleaned from the common law of grave desecration as developed in this state. Upon review, this Court essentially agrees with the lower court's approach to the question regarding the elements of the common law action and alters the lower court's answers only slightly. This Court holds that the elements of a common law cause of action for grave desecration are: (1) the grave site in question must be within a publicly or privately maintained cemetery, clearly marked in a manner which will indicate its use as a cemetery, with identifiable boundaries and limits;[7] (2) dedication of the area to the purpose of providing a place of burial by the owner of the property or that the owner acquiesced in its use for burial; (3) the area was identifiable as a cemetery by its appearance prior to the defendant's entry or that the defendant had prior knowledge of the existence of the cemetery; (4) the decedent in question is interred in the cemetery by license or right; (5) the plaintiff is the next of kin of the decedent with the right to assert a claim for desecration; and (6) the defendant proximately caused, either directly or indirectly, defacement, damage, or other mistreatment of the physical area of the decedent's grave site or common areas of the cemetery in a manner that a reasonable person knows will outrage the sensibilities of others.[8]

■ As the lower court recognized, this Court has permitted recovery where the act

---

6. This concept of an area set apart with identifiable boundaries, distinguishable from the surrounding area, is also prominent in the jurisprudence of other states. For instance, in *Sanford v. Vinal*, 28 Mass.App.Ct. 476, 552 N.E.2d 579 (1990), the court observed as follows:

   The mere passage of time does not extinguish the rights of descendants in a family burial ground; but where the family has ceased to visit the cemetery and where they have so long neglected to care for it that the ground is no longer recognizable as a cemetery, the family burial ground has been abandoned, and with it the private standing of the descendants to require that those who own the land abstain from using the land for other purposes.

   552 N.E.2d at 585–86.

7. Evidence demonstrated at trial regarding the identification of the cemetery might include such issues as the presence of physical barriers, fences, embankments, or plantings designed to provide obvious delineation of the parameters of the cemetery.

8. Nothing in this opinion shall be construed to limit or restrict the right of a claimant to pursue a cause of action for unlawful desecration of a cemetery as maintained in *Pence*, referenced above. Unlike the factual scenario in the present case, the plaintiffs in *Pence* were cemetery lot owners and next of kin alleging breach of contract, tort, and violations of public policy surrounding the removal of timber and the granting of a mining lease on property allegedly dedicated for cemetery purposes. Syllabus point two of *Pence* stated as follows: "When land has been dedicated to cemetery purposes, the next of kin of those buried in the cemetery, as well as those who own land for burial in the cemetery, have a cause of action to prevent, or recover damages resulting from, the unlawful desecration of such cemetery." 181 W.Va. at 650, 383 S.E.2d at 832, Syl. Pt. 2.

of desecration was committed indirectly, as in the case of mine subsidence in *Bennett,* wherein the coal company negligently failed to leave sufficient coal under a family cemetery to prevent subsidence. Even in *Bennett,* however, there was ultimately actual harm to the grave site area, in the form of cracks and holes developing in the graves within the cemetery. 180 W.Va. at 668, 379 S.E.2d at 391. Thus, this Court's action in permitting recovery for desecration committed in an indirect manner does not constitute the creation of a separate and distinct cause of action for indirect grave desecration. As the lower court observed, there is no precedent in this jurisdiction for a separate cause of action for indirect grave desecration, and this Court declines to create one at this juncture. Although a grave can certainly be subjected to grave desecration indirectly, the indirect manner of harm is an evidentiary issue encompassed within a cause of action for grave desecration, rather than a matter of pleading a separate cause of action. The cause of action remains grave desecration whether it was accomplished through direct or indirect means, and actual grave desecration is required.[9] Thus, this Court disagrees with the manner in which the lower court answered the question regarding a cause of action for indirect desecration.

■ With regard to damages available in claims of grave desecration, this Court agrees with the answer of the lower court. Such answer is consistent with the prior pronouncements of this Court in grave desecration cases, as discussed above. Thus, the damages available in a common law cause of action for grave desecration include nominal damages; compensatory damages if actual damage has occurred; mental distress;[10] and punitive damages if the defendant's conduct is determined to be willful, wanton, reckless, or malicious.

### C. Next of Kin Possessing Right of Recovery Under Common Law

■ This Court has consistently specified that the next of kin are entitled to recover damages in a common law cause of action for grave desecration. *See Pence,* 181 W.Va. at 656, 383 S.E.2d at 838; *Bennett,* 180 W.Va. at 671, 379 S.E.2d at 394. In *Whitehair,* this Court stated as follows:

**9.** As a matter of historical note, in a distinction which formerly existed between trespass and trespass on the case, the determination of whether a complaint stated a cause of action for trespass or for trespass on the case was based upon whether the tort was committed by *direct* application of force or was accomplished *indirectly,* summarized as follows:

> Trespass was the remedy for all forcible, direct and immediate injuries, whether to person or to property—or in other words, for the kind of conduct likely to lead to a breach of the peace by provoking immediate retaliation. Trespass on the case, or the action on the case, as it came to be called, developed somewhat later, as a supplement to the parent action of trespass, designed to afford a remedy for obviously wrongful conduct resulting in injuries which were not forcible or not direct. The distinction between the two lay in the immediate application of force to the person or property of the plaintiff, as distinguished from injury through some obvious and visible secondary cause. The classic illustration of the difference between trespass and case is that of a log thrown into the highway. A person struck by the log as it fell could maintain trespass against the thrower, since the injury was direct; but one who was hurt by stumbling over it as it lay in the road could maintain, not trespass, but an action on the case.

W. Prosser, *Handbook of the Law of Torts* § 7, at 28–29 (3rd Ed. 1964). Modern jurisprudence has essentially abandoned this artificial distinction between direct and indirect trespass. *See Stenberg v. Pacific Power & Light Co., Inc.,* 104 Wash.2d 710, 709 P.2d 793 (1985).

In addressing "the creative concept of 'indirect tort liability'" generally in *Alea London Ltd. v. Central Gulf Shipyard, L.L.C.,* 2006 WL 845752 (W.D.La.2006), the United States District Court for the Western District of Louisiana noted that the litigants had failed to provide a clear definition of the concept. 2006 WL 845752 at *8. Moreover, that court's independent research had failed to unearth any recognition or viability for the elusive concept. Thus, the court declined to adopt any concept of an indirect tort.

**10.** A question will inevitably arise concerning whether mental distress damages are available in the absence of damage to the grave site. The answer lies in the elements of the common law action of grave desecration, as enumerated above. No action may be brought if there is no defacement, damage, or other mistreatment of the physical area of the decedent's grave site or common areas of the cemetery in a manner that a reasonable person knows will outrage the sensibilities of others.

[T]he cause of action ordinarily belongs to the party with the right to possession of the body ... provided that he or she was living with the decedent at the time of death ... and has not waived his or her right.... If the spouse is deceased, the cause of action passes to the next of kin, *in order of relation established by the statute governing intestate succession.*

174 W.Va. at 463, 327 S.E.2d at 443–44 (citations omitted; emphasis supplied).

West Virginia Code § 42–1–1 (1995) (Repl. Vol.2010), *et seq.*, governs intestate succession and will provide a framework for a determination of the next of kin entitled to recovery in grave desecration claims. However, as the lower court and the parties to the underlying action have emphasized, the individuals entitled to recovery in a grave desecration case must necessarily be limited in some fashion, rather than requiring an exhaustive search of all living relatives and permitting every living descendant of the decedent to maintain or join a cause of action.

▆▆▆ This single cause of action principle was explained by this Court in *Warner v. Hedrick,* 147 W.Va. 262, 126 S.E.2d 371 (1962). In *Warner,* this Court held that damage to an automobile, damages sustained by Mr. Warner for loss of consortium, and damages for medical expenses incurred as a result of injuries sustained by Mrs. Warner in an automobile accident were the result of a single wrongful act of the defendant and were to be claimed and recovered in one action. The Court explained the concept of a single cause of action rule, as follows: "The Courts in a substantial majority of jurisdictions consistently have held that a single wrongful act causing damage to the property and injury to the person of one individual gives rise to only one cause of action against the wrongdoer." 147 W.Va. at 265, 126 S.E.2d at 373. The *Warner* Court further held that the "well established single cause of action rule is supported by logic and is well founded in reason. It accurately manifests the principle that a cause of action inheres in the causative aspect of a breach of legal duty, the wrongful act itself, and not in the various

forms of injury which flow therefrom." *Id.* at 268, 126 S.E.2d at 374.

It is authoritatively said, and we agree, that the existence of only one cause of action benefits both plaintiff and defendant. It frees the plaintiff of delay and burdensome expense and relieves the defendant of the injustice of being subjected to more than one suit for a single tort. Furthermore, the rule is in harmony with public policy and the tendency toward simplicity and directness in the determination of controversial rights and the elimination of multiplicity of suits.

*Id.* at 268, 126 S.E.2d at 374–75.

Although this Court has not taken the opportunity to apply this single wrongful act concept to a claim of grave desecration, other courts have utilized this principle in explanation for limiting the number of claims available in a grave desecration case. In *North East Coal Co. v. Pickelsimer,* 253 Ky. 11, 68 S.W.2d 760 (1934), for instance, the court held that "[i]t is universally agreed that the right of action of the 'next of kin' is a family right, and daughters and sons or brothers and sisters may maintain one action and not a separate action by each one of them." 68 S.W.2d at 763.

Similarly, in *Holleman v. Elmwood Cemetery Corp.,* 295 Ala. 267, 327 So.2d 716 (1976), the Alabama court found that all persons who occupy the same degree of kinship to the decedent should join in the same suit. To require otherwise "would subject the defendant to numerous suits by different parties for the same cause of action which should be settled in one suit." 327 So.2d at 720. In *Hogan v. Woodward Iron Co.,* 263 Ala. 513, 83 So.2d 248 (1955), the court held that "[i]n the event of damage to the grave of a deceased person, the right of action, if any, accrues first to the surviving spouse, unless, of course, there are special circumstances.... If there is no surviving spouse the right is in the next of kin in the order of their relation to the deceased." 83 So.2d at 249.

Rule 17(a) of the West Virginia Rules of Civil Procedure provides, in pertinent part, as follows: "Every action shall be prosecuted in the name of the real party in interest."

Additionally, Rule 19 of the West Virginia Rules of Civil Procedure requires the joinder of certain persons in the subject litigation.[11] Recognizing these procedural rules in the context of grave desecration cases, the Alabama court in *Rhodes Mutual Life Insurance Co. v. Moore*, 586 So.2d 866 (Ala.1991), explained that the cause of action belonged to the surviving spouse unless that person was deceased. 586 So.2d at 868. The court explained:

> when there is no surviving spouse ... the right to bring an action for the desecration of a grave vests in the next of kin in the order of their relation to the deceased; and that all individuals occupying the same degree of kin should join in the action so as not to subject the defendant to the risk of a multitude of different actions.

*Id.* (citations omitted).

Based upon the foregoing analysis, this Court agrees with the answer to the certified question provided by the lower court on the issue of those entitled to recover and holds that the next of kin who possess the right to recover in a common law cause of action for grave desecration shall be the decedent's surviving spouse or, if such spouse is deceased, the person or persons of closest and equal degree of kinship in the order provided by West Virginia Code § 42–1–1, et seq.

### D. Conclusion

Subsequent to this Court's reformulation of the certified questions from the Circuit Court of Logan County, we respond as follows:

Question No. 1: Does West Virginia Code § 29–1–8a preempt a common law cause of action for direct or indirect desecration of a grave?

This Court's Answer: Yes, to the extent that West Virginia Code § 29–1–8a specifically designates protection for certain narrowly-defined categories of graves and other related items.

Question No. 2: Does a common law cause of action for direct and/or indirect grave desecration exist, and, if so, what are the elements of such actions and the damages recoverable?

This Court's Answer: A common law cause of action for grave desecration does exist, and the elements of such cause of action are: (1) the grave site in question must be within a publicly or privately maintained cemetery, clearly marked in a manner which will indicate its use as a cemetery, with identifiable boundaries and limits; (2) dedication of the area to the purpose of providing a place of burial by the owner of the property or that the owner acquiesced in its use for burial; (3) the area was identifiable as a cemetery by its appearance prior to the defendant's entry or that the defendant had prior knowledge of the existence of the cemetery; (4) the decedent in question is interred in the cemetery by license or right; (5) the plaintiff is the next of kin of the decedent with the right to assert a claim for desecration; and (6) the defendant proximately caused, either directly or indirectly, defacement, damage, or other mistreatment of the physical area of the decedent's grave site or common areas of the cemetery in a manner that a reasonable person knows will outrage the sensibilities of others. A separate and distinct cause of action for indirect grave desecration does not exist; grave desecration accomplished through indirect means is encompassed within the elements of a common law cause of action for grave desecration.

---

**11.** Rule 19(a) of the West Virginia Rules of Civil Procedure provides as follows:

> *Persons to be joined if feasible.*—A person who is subject to service of process shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest, or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest. If the person has not been so joined, the court shall order that the person be made a party. If the person should join as a plaintiff but refuses to do so, the person may be made a defendant, or, in a proper case, an involuntary plaintiff. If the joined party objects to venue and joinder of that party would render the venue of the action improper, that party shall be dismissed from the action.

The damages available in a common law cause of action for grave desecration include nominal damages; compensatory damages if actual damage has occurred; mental distress; and punitive damages if the defendant's conduct is determined to be willful, wanton, reckless, or malicious.

Question No. 3. Who are the "next of kin" who possess the right to recover in a common law cause of action for grave desecration?

This Court's Answer: The "next of kin" who possess the right to recover in a common law cause of action for grave desecration include the decedent's surviving spouse or, if such spouse is deceased, the person or persons of closest and equal degree of kinship in the order provided by West Virginia Code § 42–1–1, et seq.

Having answered the foregoing certified questions, as reformulated, we remand this matter to the Circuit Court of Logan County for further proceedings consistent with this opinion.

Certified Questions Answered and Case Remanded.