IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2025 Term

_____

No. 24-166

_____

FILED

**May 12, 2025**

released at 3:00 p.m.
C. CASEY FORBES, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

CITY OF HUNTINGTON, WEST VIRGINIA, AND
CABELL COUNTY COMMISSION,
Petitioners,

V.

AMERISOURCEBERGEN DRUG CORPORATION, CARDINAL HEALTH, INC.,
AND MCKESSON CORPORATION,
Respondents.

_____

Certified Question from the
United States Court of Appeals for the Fourth Circuit
The Honorable Robert B. King, Circuit Judge;
The Honorable DeAndrea Gist Benjamin, Circuit Judge; and
The Honorable Barbara Milano Keenan, Senior Circuit Judge
Appeal Nos. 22-1819 and 22-1822

CERTIFIED QUESTION DECLINED

_____

Submitted: January 28, 2025
Filed: May 12, 2025

Paul T. Farrell, Jr., Esq.
Farrell & Fuller, LC
San Juan, Puerto Rico
David C. Frederick, Esq.
Lillian V. Smith, Esq.
Pro Hac Vice
Ariela M. Migdal, Esq.
Pro Hac Vice
Kathleen W. Hickey, Esq.
Pro Hac Vice
Kellogg, Hansen, Todd, Figel &
Frederick, P.L.L.C.
Washington, District of Columbia
Attorneys for Petitioners

Anne McGinness Kearse, Esq.
Motley Rice LLC
Mount Pleasant, South Carolina
Attorney for Petitioner
City of Huntington, West Virginia

Anthony J. Majestro, Esq.
Christina L. Smith, Esq.
Powell & Majestro, PLLC
Charleston, West Virginia
Michael A. Woelfel, Esq.
Matthew J. Woelfel, Esq.
Woelfel & Woelfel LLP
Huntington, West Virginia
Attorneys for Petitioner
Cabell County Commission

Amanda J. Taylor, Esq.
Taylor, Hinkley & Taylor
Beckley, West Virginia
Attorneys for Amici Curiae
The National Association of Counties
The County Executives of America
The National League of Cities
The International Municipal Lawyers
Association
The West Virginia Sheriffs'
Association

Steven R. Ruby, Esq.
Raymond S. Franks II, Esq.
Carey Douglas Kessler & Ruby PLLC
Charleston, West Virginia
Enu A. Mainigi, Esq.
Pro Hac Vice
George A. Borden, Esq.
Pro Hac Vice
Ashley W. Hardin, Esq.
Pro Hac Vice
Williams & Connolly LLP
Washington, District of Columbia
Attorneys for Respondent Cardinal
Health, Inc.

Gretchen M. Callas, Esq.
Albert F. Sebok, Esq.
Jackson Kelly PLLC
Charleston, West Virginia
Robert A. Nicholas, Esq.
Pro Hac Vice
Joseph J. Mahady, Esq.
Pro Hac Vice
Anne Rollins Bohnet, Esq.
Pro Hac Vice
Reed Smith LLP
Philadelphia, Pennsylvania
Kim M. Watterson, Esq.
Pro Hac Vice
Reed Smith LLP
Pittsburgh, Pennsylvania
Attorneys for Respondent
AmerisourceBergen Drug Corporation

Jeffrey M. Wakefield, Esq.
Flaherty Sensabaugh Bonasso  PLLC
Charleston, West Virginia
Paul W. Schmidt, Esq.
Pro Hac Vice
Timothy C. Hester, Esq.
Christian J. Pistilli, Esq.
Pro Hac Vice
Nicole M. Antoine, Esq.

The West Virginia Association of
Counties
The County Commissioners'
Association of West Virginia, and
The West Virginia Municipal League

Jason E. Causey, Esq.
Bordas & Bordas, PLLC
Wheeling, West Virginia
Deepak Gupta, Esq.
Pro Hac Vice
Gupta Wessler LLP
Washington, District of Columbia
Attorneys for Amici Curiae
American Public Health Association
and National Association of County
and City Health Officials

Philip J. Combs, Esq.
Natalie B. Atkinson, Esq.
Thomas Combs & Spann, PLLC
Charleston, West Virginia
Philip S. Goldberg, Esq.
Pro Hac Vice
Shook Hardy & Bacon L.L.P.
Washington, District of Columbia
Attorneys for Amicus Curiae
Product Liability Advisory Council,
Inc.

Marc E. Williams, Esq.
Shaina D. Massie, Esq.
Nelson Mullins Riley & Scarborough
LLP
Huntington, West Virginia
Attorneys for Amicus Curiae
American Tort Reform Association

Pro Hac Vice
Covington & Burling LLP
Washington, District of Columbia
Attorneys for Respondent
McKesson Corporation

Michael J. Farrell, Esq.
J. Ben Shepard, Esq.
Farrell, White & Legg PLLC
Huntington, West Virginia
Attorneys for Amicus Curiae
Dr. Jeffrey L. Leaberry, M.D.

Robert L. Massie, Esq.
Alexander C. Frampton, Esq.
Nelson Mullins Riley & Scarborough
LLP
Huntington, West Virginia
Charles C. Lifland, Esq.
Pro Hac Vice
Jonathan P. Schneller, Esq.
Pro Hac Vice
Attorneys for Amici Curiae
O'Melveny & Myers, LLP
Los Angeles, California
Attorneys for Amici Curiae
West Virginia Manufacturers
Association
Janssen Pharmaceuticals, Inc.

Stephen B. Farmer, Esq.
D. Kevin Coleman, Esq.
Teresa K. Thompson, Esq.
Farmer, Cline & Campbell, PLLC
Charleston, West Virginia
Attorneys for Amici Curiae
West Virginia United Health Systems,
Inc. and
Vandalia Health, Inc.

JUSTICE BUNN delivered the Opinion of the Court.

JUSTICE ARMSTEAD and JUSTICE TRUMP, deeming themselves disqualified, did not participate.

JUDGE DIMLICH and JUDGE SALANGO, sitting by temporary assignment.

JUSTICE WALKER concurs and may write separately.

CHIEF JUSTICE WOOTON and JUDGE SALANGO dissent and may write separately.

**SYLLABUS BY THE COURT**

1.     "A de novo standard is applied by this Court in addressing the legal issues presented by a certified question from a federal district or appellate court." Syllabus point 1, *Light v. Allstate Insurance Co.*, 203 W. Va. 27, 506 S.E.2d 64 (1998).

2.     Pursuant to the Uniform Certification of Questions of Law Act, West Virginia Code §§ 51-1A-1 to -13 (1996), we are simply asked to answer questions of law. Accordingly, the factual record regarding the legal issue in dispute must be sufficiently precise and undisputed, and this Court will assume that the findings of fact by the certifying court are correct. Further, the legal issue must substantially control the case.

3. "Courts are not constituted for the purpose of making advisory decrees or resolving academic disputes." Syllabus point 1, in part, *Harshbarger v. Gainer*, 184 W. Va. 656, 403 S.E.2d 399 (1991) (quoting *Mainella v. Board of Trustees of Policemen's Pension or Relief Fund of Fairmont*, 126 W. Va. 183, 185-86, 27 S.E.2d 486, 487-88 (1943)).

**BUNN, Justice:**

The United States Court of Appeals for the Fourth Circuit certified a question to this Court, asking:

> Under West Virginia's common law, can conditions caused by the distribution of a controlled substance constitute a public nuisance and, if so, what are the elements of such a public nuisance claim?

This question emerges from lawsuits filed by the City of Huntington and the Cabell County Commission against drug distributors AmerisourceBergen Drug Corp., Cardinal Health, Inc., and McKesson Corp., relating to the serious opioid epidemic facing Huntington and Cabell County, West Virginia. After a ten-week bench trial, the United States District Court for the Southern District of West Virginia ruled in favor of the defendant drug distributors. The plaintiffs appealed the district court's judgment, and the Fourth Circuit certified the question above. Many of the factual findings made by the district court are disputed by the parties and are currently on appeal to the Fourth Circuit. Because those disputed findings underlie our consideration of the certified question and are essential to addressing the issue before us, we respectfully decline to answer the certified question.[1]

---

[1] We appreciate the participation of Amici Curiae, the American Tort Reform Association, the National Association of Counties, the County Executives of America, the National League of Cities, the International Municipal Lawyers Association, the West Virginia Sheriffs' Association, the West Virginia Association of Counties, the County Commissioners' Association of West Virginia, the West Virginia Municipal League, West Virginia United Health Systems, Inc., Vandalia Health, Inc., the American Public Health Association, the National Association of County and City Health Officials, the Product Liability Advisory Council, Inc., Dr. Jeffrey L. Leaberry, M.D., the West Virginia Manufacturers Association, and Janssen Pharmaceuticals, Inc. We considered their arguments in reviewing the certified question.

# I.

## FACTUAL AND PROCEDURAL HISTORY

In 2017, the City of Huntington ("Huntington") and the Cabell County Commission ("Cabell County") (collectively "the plaintiffs"), each separately sued defendants AmerisourceBergen Drug Corp., Cardinal Health, Inc., and McKesson Corp., opioid distributors (collectively "the defendants"). *City of Huntington, W. Va. v. AmerisourceBergen Drug Corp.*, 96 F.4th 642, 644 (4th Cir. 2024) ("*Cert. Order*").[2] The plaintiffs alleged that defendants "'created, perpetuated, and maintained' the opioid epidemic by repeatedly shipping to pharmacies orders of opioids in quantities that the distributors 'knew or should have known exceed[ed] any legitimate market' for the drugs."[3] *Id.* (alteration in original, no citation in original).[4] Ultimately, the United States Judicial

---

[2] Typically, when this Court reviews the factual and procedural history relating to a certified question from a federal court, we consider the facts as they are relayed by the certifying court, although we may also consider the record before that court. *See* Syl. pt. 2, *Valentine v. Sugar Rock, Inc.*, 234 W. Va. 526, 766 S.E.2d 785 (2014). While we rely somewhat on the limited facts and procedural history as recited in the Fourth Circuit's certification order, we also note many of district court's findings of fact and related conclusions of law disputed by the plaintiffs on appeal, although these findings and related conclusions were not discussed at length in the certification order. We find it necessary to recite portions of the district court's findings and conclusions to explain our determination that this is not a certified question that this Court may answer at this juncture. Throughout the opinion, we use citations to indicate whether the information is from the Fourth Circuit or the district court.

[3] The original complaints included other defendants and causes of action. However, those defendants and causes of action are not relevant here.

[4] The district court identifies the operative complaint as the Third Amended Complaint. *City of Huntington v. AmerisourceBergen Drug Corp.*, 609 F. Supp. 3d 408, 414 (S.D.W. Va. 2022).

2

Panel on Multidistrict Litigation ("MDL") transferred the cases to the MDL court, the United States District Court for the Northern District of Ohio, which in turn directed the parties to "streamline" their claims after designating the lawsuits as bellwether cases.[5] *Id.* at 644 n.1. The plaintiffs then "narrowed their claims to a public nuisance suit" against the three distributors. *Id.* Essentially, the "plaintiffs contended that the defendants' conduct resulted in public nuisance that was subject to abatement under West Virginia common law." *Id.* at 644-45. The MDL court then remanded the case to the Southern District of West Virginia, where the district court consolidated the cases and held a ten-week bench trial. *See id.* at 644 & 644 n.1.

The district court ruled in favor of the defendant distributors in a 184-page order entitled "Findings of Fact and Conclusions of Law." *See City of Huntington v. AmerisourceBergen Drug Corp.*, 609 F. Supp. 3d 408 (S.D.W. Va. 2022) (page number

---

[5] Bellwether trials are, essentially, test cases in multidistrict litigation in federal courts:

> Bellwether trials are individual trials that are conducted by MDL transferee judges with the goal of producing reliable information about other cases centralized in that MDL proceeding. . . . If bellwether cases are representative of the broader range of cases in the MDL proceeding, they can provide the parties and court with information on the strengths and weaknesses of various claims and defenses and the settlement value of cases.

Melissa J. Whitney, Fed. Jud. Ctr., Bellwether Trials in MDL Proceedings: A Guide for Transferee Judges 3-4 (2019).

from original filing). Relevant to this certified question, the district court concluded that "there is and has been an opioid epidemic" in Huntington and Cabell County, and recited statistics including those regarding overdose deaths and addiction in those locations. *Id.* at 419-20.

The district court then explained the federal Controlled Substances Act ("CSA"), noting that it "establishes a closed system for drugs classified as controlled substances." *Id.* at 421. Within that closed system, the district court stated that

> [Drug Enforcement Administration ("DEA")]-registered manufacturers may sell controlled substances only to DEA-registered distributors and pharmacies; DEA-registered distributors may distribute controlled substances only to DEA-registered dispensers (such as pharmacies and hospitals); and DEA-registered dispensers may dispense controlled substances only pursuant to prescriptions written by DEA-registered prescribers.

*Id.* The CSA regulations require distributors, like the defendants, to "design and operate a system to disclose to the [distributors] suspicious orders of controlled substances" and to report suspicious orders to the DEA when they discover them. *Id.* at 422 (quoting 21 C.F.R. § 1301.74(b)). The DEA, via letter to distributors, also recognized "the duty of distributors to maintain effective controls against diversion of controlled substances into other than legitimate medical, scientific, and industrial channels"[6] and "to report suspicious orders of

---

[6] This duty is related to "the statutory factors that the DEA must consider in deciding whether to revoke a distributor's registration." *AmerisourceBergen Drug Corp.*, 609 F. Supp. 3d at 423.

4

controlled substances." *Id.* at 423-24. The court explained that "[t]he DEA does not and will not tell a distributor whether an order is suspicious but, rather, leaves that decision to the distributor." *Id.* at 422-23.

The district court concluded that "Defendants Substantially Complied with Their Duties under the CSA to Design and Operate a [Suspicious Order Monitoring] System and Report Suspicious Orders." *Id.* at 425. It further found that the "[p]laintiffs did not prove that defendants failed to maintain effective controls against diversion and design and operate sufficient [suspicious order monitoring] systems to do so[,]" and that the "plaintiffs did not prove that defendants' due diligence with respect to suspicious orders was inadequate." *Id.* at 438.

While the plaintiffs asserted that the volume of prescription opioids distributed by the defendants was "per se unreasonable," the district court also determined that the plaintiffs "failed to show that the volume of prescription opioids distributed in Cabell/Huntington was because of unreasonable conduct on the part of defendants." *Id.* at 449. The court specifically noted "there is nothing unreasonable about distributing controlled substances to fulfill legally written prescriptions." *Id.* The court also recognized that the plaintiffs "offered no evidence that [d]efendants ever distributed controlled substances to any entity that did not hold a proper registration from DEA or license from the West Virginia Board of Pharmacy" and "offered no evidence, expert or otherwise, of

5

how many prescription opioids should have been distributed in Cabell/Huntington" while simultaneously claiming that the volume of the distribution was "excessive." *Id.* at 468-69.[7]

In its conclusions of law, which relied heavily on the district court's findings of fact, the district court determined that public nuisance law does not provide a remedy for the plaintiffs based on the facts of this case. *Id.* at 471. Relatedly, the district court predicted that this Court would not "extend the law of public nuisance to the sale, distribution, and manufacture of opioids." *Id.* at 475. In its analysis of what it considered to be the elements of public nuisance, the district court also decided that "Plaintiffs Have Failed to Show That Defendants' Conduct Interfered with a Public Right." *Id*. The district court concluded that the plaintiffs "failed to meet their burden of proving causation." *Id.* at 481. Specifically, two causation subheadings in the order stated "Plaintiffs Have Failed to Prove That Defendants' Conduct Was a Proximate Cause of Diversion," *id.* at 476, and "Under the Evidence Presented, the Harms That Plaintiffs Claim Defendants Caused Are Too Remote," *id.* at 481.

---

[7] The district court also recognized that "even if there was some level of 'illegal prescribing' in Cabell/Huntington," it was "unable to discern" if the illegal prescribing "was significant enough to impact the overall volume of prescription opioids distributed by defendants." *AmerisourceBergen Drug Corp.*, 609 F. Supp. 3d at 470. The court further found that "detecting and thwarting illegal prescribing is not the duty of distributors," but instead the distributors' role is to "detect and avoid supplying *pharmacies* that are themselves not part of the 'legitimate medical . . . channel[ ].'" *Id.* (emphasis and alterations in original) (quoting 21 U.S.C. § 823(b)(1)). The court concluded that "[t]he facts of this case do not support a failure to fulfill that role by defendants." *Id.*

Regarding the plaintiffs' proposed relief, a fifteen-year abatement plan, the district court found that the plan did not "include any provisions to constrain defendants' conduct generally or their distribution of prescription opioids in the City of Huntington or Cabell County specifically." *Id.* at 470. As a conclusion of law, the district court also determined that the relief the plaintiffs sought was "not properly understood as in the nature of abatement." *Id.* at 484.

In light of the district court's findings and conclusions, the court entered a judgment in favor of the defendants. *Id.*

The plaintiffs then appealed to the Fourth Circuit on numerous grounds, contesting both the district court's factual findings and its entwined legal conclusions. On appeal, the plaintiffs argue that the district court erred in finding that their public nuisance claim "does not apply to the distribution and sale of opioids" and relatedly finding that the distributors "did not unreasonably interfere with a public right." Contending that the distributors violated their duties under the CSA "by shipping suspicious orders without investigating them," "continued to not investigate suspicious orders even after DEA actions," and "supplied Cabell/Huntington's highest overprescribers of opioids," the plaintiffs contest the district court's related factual findings regarding the distributors' actions. The plaintiffs also maintain that the district court "Misinterpreted And Misapplied The CSA" by "incorrectly narrow[ing]" the distributors' duties under the CSA, causing "erroneous fact-findings," and also "erroneously ignored DEA's allegations and [the

7

distributors'] admissions of wrongdoing," and "Erred In Assessing The Reasonableness Of [the distributors'] Conduct." Within that argument, the plaintiffs claim that the district court applied "erroneous legal standards" and "ignored and mischaracterized evidence of opioids' harms." The appeal also alleges that the district court erred when it determined that the plaintiffs "did not establish causation," arguing that the defendants "Proximately Caused The Opioid Epidemic In Cabell/Huntington" and that the court "Misapplied The Causation Standard." Finally, the plaintiffs claim that the district court also erred by determining that "the requested abatement remedy is unavailable."

After the parties submitted briefing and argued before the Fourth Circuit, the Fourth Circuit sua sponte certified the question to this Court via a certification order pursuant to the Uniform Certification of Questions of Law Act, West Virginia Code §§ 51-1A-1 through -13.

The certification order sets forth the procedural history of the case and addresses some of the district court's conclusions regarding the unavailability of a public nuisance claim or an abatement remedy, including the district court's determination that "West Virginia's common law did not cover the plaintiffs' claims" and rejection of the abatement plan developed by "an expert in opioid abatement intervention." *Cert. Order*, 96 F.4th at 645. Additional findings and conclusions by the district court appear in footnotes. Footnote three recognizes the *district court*'s determination that the plaintiffs "had not shown that the distributors' conduct was unreasonable or was a proximate cause

8

of any nuisance." *Id.* at 645 n.3 (citing *Amerisource*, 609 F. Supp. 3d at 449, 476). However, the Fourth Circuit indicates that it would only need to "address the district court's alleged errors on reasonableness and causation" if this Court determines that public nuisance is "a cognizable claim in this case." *Id.* Concluding that the district court's determinations regarding reasonableness and causation "are not 'relevant to the [certified] question[s],'" the Fourth Circuit does not describe them. *Id.* (alterations in original) (quoting W. Va. Code § 51-1A-6(a)(2)).

Summarizing the statutory and regulatory framework relating to the CSA, the certification order describes it as a "'closed regulatory system' in which only entities registered with the DEA may manufacture, distribute, or dispense controlled substances." *Id.* at 646 (quoting *Gonzales v. Raich*, 545 U.S. 1, 13, 125 S. Ct. 2195, 2203, 162 L. Ed. 2d 1 (2005)). After this summary, which includes information on the supply chain method for certain controlled substances and how registrants, including distributors, must disclose suspicious orders, the certification order recognizes that "[d]espite the controls set forth in the CSA, the opioid epidemic has led to 'an extraordinary public health crisis that started at least two decades ago and has accelerated over the past decade.'" *Id.* at 647 (quoting *AmerisourceBergen Drug Corp.*, 609 F. Supp. 3d at 419). The Fourth Circuit lists statistics relating to drug overdoses, disease rates, and increases in crime and decreasing property values, as also recited in the district court's order. *Id.*

When briefly describing the CSA framework, the certification order contains a footnoted comment that it "set[s] forth the relevant statutory framework in the event that the Supreme Court of Appeals determines that the legality of the defendants' actions affects the availability of the public nuisance remedy." *Id.* at 646 n.4. In the same footnote, the Fourth Circuit acknowledges that, on appeal, the plaintiffs challenge "the district court's holdings on reasonableness and causation," summarizing the plaintiffs' arguments as follows: that they contend that the distributors violated statutory duties "by failing to identify or investigate suspicious orders of opioids, and by raising ordering thresholds to allow pharmacies to place large orders of opioids 'without triggering review.'" *Id.* However, the certification order declares that it "do[es] not expand on the plaintiffs' separate arguments in this Order because the plaintiffs contend that a condition can constitute a public nuisance even if the conduct that causes the condition is lawful." *Id.*

In regard to the issue of a public nuisance cause of action, the certification order explains that the parties disagree on whether public nuisance "covers the defendants' distribution of opioids," and the order also recognizes that this Court "has not determined whether the common law of public nuisance may apply to conditions caused by distribution of a potentially dangerous product." *Id.* at 648-49. In certifying the question to this Court, the Fourth Circuit asserts that "no controlling appellate decision answers the question whether conditions caused by the distribution of a controlled substance can constitute a public nuisance under West Virginia common law and, if so, what the elements are of such a claim." *Id.* at 651.

10

## II.

## STANDARD OF REVIEW

We exercise plenary review of a question certified by the Fourth Circuit: "'A de novo standard is applied by this Court in addressing the legal issues presented by a certified question from a federal district or appellate court.'" Syl. pt. 1, *Light v. Allstate Ins. Co.*, 203 W. Va. 27, 506 S.E.2d 64 (1998); *see* Syl. pt. 1, *Bower v. Westinghouse Elec. Corp.*, 206 W. Va. 133, 522 S.E.2d 424 (1999) ("This Court undertakes plenary review of legal issues presented by certified question from a federal district or appellate court.").

During this review, "this Court will assume that the findings of fact by the certifying court are correct." *Barefield v. DPIC Companies, Inc.*, 215 W. Va. 544, 550, 600 S.E.2d 256, 262 (2004). Still, we may consider "any portions of the federal court's record that are relevant to the question of law to be answered." Syl. pt. 2, in part, *Valentine v. Sugar Rock, Inc.*, 234 W. Va. 526, 766 S.E.2d 785 (2014). Yet, in the case of disputed facts, we do not sit as a factfinder or as an appellate court reviewing the factfinder's determinations. *See Persinger v. Carmazzi*, 190 W. Va. 683, 685, 441 S.E.2d 646, 648 (1994) ("We would point out initially that we are not sitting as an appellate court. Rather, pursuant to *W. Va. Code* 51-1A-1 [1976] our job is simply to answer the questions of law posed by the Fourth Circuit." (alteration in original)); *Barefield*, 215 W. Va. at 550, 600 S.E.2d at 262.

11

# III.

## DISCUSSION

The tragic effects of the opioid epidemic in Huntington and Cabell County are well-known and accepted by the parties. Yet, we resolve that we cannot, at this juncture, answer the question certified to this Court from the Fourth Circuit due to the disputed factual findings, and related legal conclusions resting on those factual findings, on appeal from the federal district court in this case.

This Court "may answer a question of law certified to it" by a federal circuit court "if the answer may be determinative of an issue in a pending cause in the certifying court and if there is no controlling appellate decision, constitutional provision or statute of this State." W. Va. Code § 51-1A-3. As this Court has recognized, a proper certified question "can avoid needless delay, serve judicial economy, and avoid the expense of a trial and subsequent appeal for the parties." *Bass v. Coltelli*, 192 W. Va. 516, 520, 453 S.E.2d 350, 354 (1994), *superseded by statute*, W. Va. Code § 58-5-2, *as recognized by Smith v. Consol. Pub. Ret. Bd.*, 222 W. Va. 345, 664 S.E.2d 686 (2008) (regarding earlier version of West Virginia Code § 58-5-2, which allows state circuit courts to certify certain questions to this Court); *see also Lehman Bros. v. Schein*, 416 U.S. 386, 391, 94 S. Ct. 1741, 1744, 40 L. Ed. 2d 215 (1974) (acknowledging that certification "in the long run save[s] time, energy, and resources and helps build a cooperative judicial federalism").

12

This Court has endeavored to answer certified questions from federal courts where proper and practical, and we value our collegial relationship with the Fourth Circuit. Still, as a threshold matter, we must recognize the limits on our power to answer certified questions. *See* W. Va. Code § 51-1A-3 (authorizing this Court to answer only questions of law). As we have recognized in the context of certifying questions from a state circuit court, under a different, yet informative, statutory scheme, a certified question's purpose is to "determine legal correctness" of certain issues that are "critical" to "determine the final outcome of a case." *Bass*, 192 W. Va. at 520, 453 S.E.2d at 354. As we have often recited, this Court only answers a certified question if "the disposition of the case depends wholly or principally upon the construction of law determined by the answer, regardless of whether the answer is in the negative or affirmative." *State ex rel. Advance Stores Co. v. Recht*, 230 W. Va. 464, 468, 740 S.E.2d 59, 63 (2013) (quoting *Bass*, 192 W. Va. at 521, 453 S.E.2d at 355) (regarding questions certified from a state court). Although we employ a de novo review, the certified question still must "bring . . . a framework sufficient to allow this Court to issue a decision which will be pertinent and inevitable in the disposition of the case below." *Recht*, 230 W. Va. at 468, 740 S.E.2d at 63 (quoting *Hairston v. Gen. Pipeline Constr., Inc.*, 226 W. Va. 663, 672 n.5, 704 S.E.2d 663, 672 n.5 (2010)). To answer a certified question, we require specific, undisputed facts and a question concerning a legal issue that substantially controls the case. In *Barefield v. DPIC Companies, Inc.*, the Court recognized, and we now hold, that

> pursuant to the Uniform Certification of Questions of Law Act, [West Virginia Code §]§ 51-1A-1 to -13 [1996], we are simply asked to answer questions of law. Accordingly, the factual

13

> record regarding the legal issue in dispute must be sufficiently precise and undisputed, and this Court will assume that the findings of fact by the certifying court are correct. Further, the legal issue must substantially control the case.

215 W. Va. at 550, 600 S.E.2d at 262 (second alteration in original); *cf.* Syl. pt. 5, in part, *Bass*, 192 W. Va. 516, 453 S.E.2d 350 (regarding certified questions from state circuit courts);[8] *see generally Shears v. Ethicon, Inc.*, 250 W. Va. 226, ___, 902 S.E.2d 775, 779 (2024) (answering questions regarding "the burden of proof borne by a plaintiff asserting a strict liability design defect claim" where facts were agreed upon).

In considering the question before us, we note that whether a nuisance exists is a factual issue. Moreover, this Court has repeatedly stated that "[a] public nuisance is an act or condition that unlawfully operates to hurt or inconvenience an indefinite number of persons[,]" and has distinguished between a public and a private nuisance by explaining

---

[8] Syllabus point 5 of *Bass v. Coltelli*, in part, reads as follows: "[C]ertification [of a question] will not be accepted unless there is a sufficiently precise and undisputed factual record on which the legal issues can be determined. Moreover, such legal issues must substantially control the case." 192 W. Va. 516, 453 S.E.2d 350 (1994), *superseded by statute*, W. Va. Code § 58-5-2, *as recognized by Smith v. Consol. Pub. Ret. Bd.*, 222 W. Va. 345, 664 S.E.2d 686 (2008). We have applied these limitations both to questions certified from our state courts, pursuant to West Virginia Code § 58-5-2, and from federal courts, pursuant to the Uniform Certification of Questions of Law Act, West Virginia Code §§ 51-1A-1 to -13. *See Barefield v. DPIC Companies, Inc.*, 215 W. Va. 544, 550, 600 S.E.2d 256, 262 (2004) (addressing a question certified from a federal court, yet citing Syllabus point 5 in *Bass*, 192 W. Va. 516, 453 S.E.2d 350, regarding the certification of questions from a state circuit court pursuant to West Virginia Code § 58-5-2). Federal courts have also recognized these limitations when certifying questions to this Court. *See, e.g.*, *Rich v. Simoni*, No. 1:12CV12, 2014 WL 4978442, at *37 (N.D.W. Va. Sept. 30, 2014), *certified question answered*, 235 W. Va. 142, 772 S.E.2d 327 (2015) (adopting magistrate court's recommendation for certification that quotes and cites cases relating to questions certified pursuant to West Virginia Code § 58-5-2).

that a public nuisance "affects the general public," while a private nuisance "injures one person or a limited number of persons only." *Sharon Steel Corp. v. City of Fairmont*, 175 W. Va. 479, 483, 334 S.E.2d 616, 620 (1985) (quoting *Hark v. Mountain Fork Lumber Co.*, 127 W. Va. 586, 595-96, 34 S.E.2d 348, 354 (1945)); *Duff v. Morgantown Energy Assocs. (M.E.A.)*, 187 W. Va. 712, 716, 421 S.E.2d 253, 257 (1992) (per curiam) (quoting same from *Hark*); *State ex rel. Smith v. Kermit Lumber & Pressure Treating Co.*, 200 W. Va. 221, 241, 488 S.E.2d 901, 921 (1997) (quoting same from *Sharon Steel* and regarding the statute of limitations applicable to a public nuisance cause of action). Yet, while we have, at times, addressed the reasonableness or unreasonableness of an action when discussing nuisance, throughout our nuisance doctrine is a common thread: whether a nuisance exists "raises a question of fact." Syl. pt. 5, in part, *Sharon Steel Corp.*, 175 W. Va. 479, 334 S.E.2d 616 (quoting Syl. pt. 3, in part, *Sticklen v. Kittle*, 168 W. Va. 147, 287 S.E.2d 148 (1981) (regarding whether the use of real property is a nuisance).

As we must answer only questions of law that rest on an undisputed factual record, at times, this Court has declined to answer certified questions when the factual record was undeveloped.[9] Recently, in *SWN Production Co., LLC v. Kellam*, the Court

<hr />

[9] The authorizing statute for certified questions also reflects the requirement of an undisputed factual record and requires that a certification order contain "[t]he facts relevant to the question, showing fully the nature of the controversy out of which the question arose," and, "[i]f the parties cannot agree upon a statement of facts," the court certifying the question must "determine the relevant facts" and must "state them" in the certification order. W. Va. Code § 51-1A-6(a)(2), (b). The Court has recognized that the purpose of the factual statement requirement in § 51-1A-6(a)(2) relates to the fact that "the certifying court sends only one document to this Court for review: the certification order,"

declined to answer a reformulated[10] certified question regarding the applicability of a contractual term because "[t]he answer to this question necessarily involves the exploration of contractual language, the possible need for interpretation of said language, and the development of facts to assist either the court or the factfinder, as appropriate." 247 W. Va. 78, 81, 875 S.E.2d 216, 219 (2022); *see also Harper v. Jackson Hewitt, Inc.*, 227 W. Va. 142, 156, 706 S.E.2d 63, 77 (2010) (refusing to answer a question when the answer to the certified question relied on the "the nature of the parties' relationship," which would require "a comprehensive factual analysis," and the Court lacked "sufficient undisputed findings of fact allowing this Court to conduct such analysis").

Disputed facts, not only undeveloped facts, also necessitate our declination of certified questions, and we are not alone in that approach. The Nevada Supreme Court declined to answer a certified question from a federal district court regarding the existence of a type of claim in a case where the certifying court recognized that "the parties dispute certain underlying facts and that the district court has not yet made any factual determinations with regard to those disputes." *Scottsdale Ins. Co. v. Liberty Mut. Ins. Co.*,

without briefs, an appendix, or records, yet the Court may examine the record when answering the question. *Valentine*, 234 W. Va. at 532, 766 S.E.2d at 791. However, these statutory requirements emphasize the need to have undisputed facts to answer the question.

[10] "When a certified question is not framed so that this Court is able to fully address the law which is involved in the question, then this Court retains the power to reformulate questions certified to it under . . . the Uniform Certification of Questions of Law Act found in W. Va. Code, 51-1A-1, *et seq.* . . . ." Syl. pt. 3, in part, *Kincaid v. Mangum*, 189 W. Va. 404, 432 S.E.2d 74 (1993); Syl. pt. 1, *SWN Prod. Co., LLC v. Kellam*, 247 W. Va. 78, 875 S.E.2d 216 (2022).

130 Nev. 1241, 2014 WL 7188790, at *1 (Dec. 16, 2014) (unpublished disposition). In declining the certified question, the Nevada Supreme Court resolved that with an "absence of an established set of underlying facts," the court's "answers to the certified questions will largely not be determinative of any part of the federal case and will potentially be of questionable precedential value." *Id.*

Such is the case here. In their appeal to the Fourth Circuit, and in their briefing before this Court, the plaintiffs contest the district court's factual findings favorable to the defendants and the related legal conclusions dependent upon those factual findings. Any attempt to reformulate or narrow the certified question still necessarily depends on these factual findings and related legal conclusions disputed by the parties and on appeal. We would have to assume that some or all of the district court's disputed findings of fact and related legal conclusions were incorrect to answer any kind of question regarding public nuisance, because if the district court's challenged findings and related conclusions are correct, this Court need not reach the legal question of whether a public nuisance cause of action exists in these circumstances.

The certification order suggests, through footnotes three and four, that the disputed facts and related legal conclusions do not matter to any analysis by this Court. In other words, the Court is asked to ignore the district court's factual findings and legal conclusions—particularly those findings relating to reasonableness, causation, and whether the defendants violated their statutory duties—and instead, answer the certified question in

17

a vacuum. Yet, we cannot disregard the district court's findings, related conclusions, and the parties' arguments regarding the same on appeal before the certifying court. With these issues in dispute, and therefore, with unsettled facts and related unreviewed legal conclusions, any answer would be advisory, even given a reformulation. *See Wingett v. Challa*, 249 W. Va. 252, 256, 895 S.E.2d 107, 111 (2023) ("Certified questions can and should be reformulated or refused to avoid issuing advisory opinions."); *see also Huston v. Mercedes-Benz USA, LLC*, 227 W. Va. 515, 523-24, 711 S.E.2d 585, 593-94 (2011) (refusing to answer a second certified question because it would be advisory). We cannot assume what the Fourth Circuit will determine regarding the contested rulings by the district court, either factually or legally. And, as we have long recognized, "[c]ourts are not constituted for the purpose of making advisory decrees or resolving academic disputes." Syl. pt. 1, in part, *Harshbarger v. Gainer*, 184 W. Va. 656, 403 S.E.2d 399 (1991) (quoting *Mainella v. Bd. of Trs. of Policemen's Pension or Relief Fund of Fairmont*, 126 W. Va. 183, 185-86, 27 S.E.2d 486, 487-88 (1943)).

**IV.**

**CONCLUSION**

For these reasons, we respectfully decline to answer the Fourth Circuit's certified question. Still, our declination does not preclude future consideration of this question, and does not affect whether we accept or decline answering future questions certified by a federal court related to the issues raised here, yet under conditions where we may more properly consider the question.

CERTIFIED QUESTION DECLINED

19